UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

HEDGEYE RISK MANAGEMENT, LLC, )
1 High Ridge Park )
Stamford, Connecticut 06905 )
)
      Plaintiff, )
)
v. )   CIVIL ACTION NO.
)
PAUL HELDMAN )
8221 Cambourne Court )
Gaithersberg, Maryland 20877 )
)
And )
)
HELDMAN SIMPSON PARTNERS, )
c/o Sasha Simpson )
3018 Q Street NW, Apartment 1 )
Washington, DC 20007 )
)
      Defendants. )

## **VERIFIED COMPLAINT**

### **PARTIES**

1.    The plaintiff, Hedgeye Risk Management, LLC (hereinafter "Hedgeye" or "the Plaintiff") is a limited liability company with a principal place of business located in Stamford, Connecticut.

2.    The defendant, Paul Heldman (hereinafter "Heldman" or "the Defendant"), is an individual residing in Gaithersburg, Maryland.

3.    The defendant, Heldman Simpson Partners, LLC (hereinafter "Heldman Simpson Partners" or "the Defendant") is a Washington, D.C., limited liability company.

## JURISDICTION

4. This court has diversity jurisdiction by virtue of 28 U.S.C. §1332.

## FACTS

5. At all times material hereto, Hedgeye is a registered investment advisor with the Connecticut Department of Banking and provides financial and economic research and analysis to institutional investors and newsletter products to mass market customers.

6. At all times material hereto, Potomac Research Group (hereinafter "PRG") was an independent research firm that provided policy research and analysis to institutional investors.

7. The Defendant, Heldman, entered into an employment agreement ("the Employment Agreement") with PRG on November 6, 2008, and became employed with PRG as a Senior Health Policy Analyst. See the Employment Agreement attached hereto as Exhibit 1.

8. The Employment Agreement contained a "non-compete" clause where by Heldman agreed that he would not, directly or indirectly, without the prior written approval of PRG, work for or provide services to any other company that engages in health policy research information and deliver those services to institutional investors in different formats including without limitation, research reports, telephone calls, meetings and conference, for a period of one year from his last date of employment.

9. The Employment Agreement also contains a "non-solicitation" clause whereby Heldman agreed that for a period of one year after the last date of his employment, that he would not, directly or indirectly, without the prior written approval of PRG, solicit or induce any person or entity what at the time is or who was at any time during Heldman's employment an employee, customer, subscriber, consultant, contractor, vendor, or supplier of PRG.

10. Heldman and PRG operated in accordance with the terms of the Employment Agreement for over seven (7) years, during which time Heldman became a valued and trusted employee at PRG.

11. On December 15, 2015 PRG sold its assets to Hedgeye as set forth in the Asset Purchase Agreement ("the Asset Purchase Agreement") entered into by Hedgeye and PRG. See Asset Purchase Agreement, attached as Exhibit 2.

12. In addition to acquiring PRG's substantial client base through the Asset Purchase Agreement, Hedgeye also acquired PRG's talented employees, as the Agreement makes clear. See Exhibit 2.

13. Hedgeye recognized that the core of PRG's value was in its personnel who provided policy analysis and investment research and strategy to its clients, who are institutional investors and private equity firms, and provided for their acquisition in the Asset Purchase Agreement. See Exhibit 2.

14. The parties memorialized their understanding in the Asset Purchase Agreement in "ARTICLE I, SALE AND PURCHASE OF ASSETS," which sets forth that PRG agreed to transfer and assign to Hedgeye all of the assets of its business, including its employee contracts, as set forth in the "DISCLOSURE SCHEDULE TO THE ASSET PURCHASE AGREEMENT." PRG's employees are listed in Schedule 5.13. See Exhibit 2.

15. The Asset Purchase Agreement further details that PRG intended to transfer to Hedgeye all marketing and technical know-how of its business, as well as all general, financial and personnel records, including employee records, which include employee agreements, in addition to "all other rights and assets relating to, or used in connection with the conduct of the Business." See Exhibit 2.

16. Further, not only did Hedgeye purchase PRG's assets, it assumed certain PRG liabilities, as set forth in "ARTICLE II, ASSUMED OBLIGATIONS; NON-ASSIGNABLE ASSETS," including "all liabilities and obligations relating to employee benefits, compensation or other arrangements with respect to employees of Seller arising on or after December 1, 2015." See Exhibit 2.

17. The parties went so far as to specify, concerning Heldman, that he receive his $25,000 end of year bonus by March 31, 2016.

18. The parties also agreed that Suzanne Clark, former PRG founder and President, was going to give him one unit of her equity in Research Edge Holdings, LLC, in return for Heldman's continued employment with Hedgeye.

19. At all times material hereto, during his employment with PRG, Heldman was a valued employee in a position of trust and confidence within PRG, with access to sensitive client information.

20. On January 21, 2016, Heldman quit work for Hedgeye without notice.

21. Upon information and belief, since January, 2016, Heldman has formed Heldman Simpson Partners, and has recruited two other Hedgeye employees to join him in the new business that directly competes with Hedgeye.

22. Heldman advertises that he "specializes in translating legislative developments and policy changes… for the investment community," and that prior to forming Heldman Simpson Partners, he "ran" the healthcare team at PRG.

23. Upon information and belief, Heldman used the Plaintiff's instrumentalities to start his business while he was still employed with Hedgeye.

24. Upon information and belief, Heldman has reached out to and solicited Hedgeye clients in order to provide health policy research information services to them.

## COUNT I
### Injunctive Relief – Heldman

25. The Plaintiff incorporates the preceding paragraphs as if specifically set forth herein.

26. Hedgeye will be irreparably harmed should the Defendant continue to solicit Hedgeye clients and compete with Hedgeye during the pendency of this action.

27. Hedgeye believes that there is a reasonable likelihood that it will recover a judgment in this matter.

WHEREFORE, Hedgeye requests that this Honorable Court grant its request for injunctive relief, and enter an order prohibiting the Defendant from competing with Hedgeye, or soliciting its employees or clients during the pendency of this action, and for any other such relief as this Court deems just and proper.

## COUNT II
### Breach of Contract - Heldman

28. The Plaintiff incorporates the preceding paragraphs as if specifically set forth herein.

29. Heldman entered into the Employment Agreement with PRG in 2008.

30. Hedgeye purchased from PRG the right to enforce PRG's employment agreements in the purchase of PRG's assets.

31. By entering into business competition with Hedgeye, and by soliciting Hedgeye's employees and clients, the Defendant has breached his Employment Agreement.

32. As a result of the Defendant's breach of his Employment Agreement, Hedgeye has sustained damages.

WHEREFORE, the Plaintiff requests that this Honorable Court enter judgment against the Defendant for his breach of contract and award the Plaintiff its damages as well as its reasonable costs and attorneys' fees, as well as any such other relief as this Court deems appropriate and just.

## COUNT III
### Breach of Fiduciary Duty And Duty of Loyalty - Heldman

33. The Plaintiff incorporates the preceding paragraphs as if specifically set forth herein.

34. The Defendant, Heldman, was a valued employee of PRG and Hedgeye, and at all times material hereto, enjoyed a position of trust and confidence within PRG and Hedgeye.

35. In his position of trust and confidence, the Defendant, Heldman, owed his employer a duty of good faith, utmost honesty and loyalty such that a fiduciary duty arose from Heldman's employment in a position of trust and confidence.

36. The Defendant breached his fiduciary obligation to his employer by actively soliciting his employer's clients and employees.

37. As a result of the Defendant's breach of his fiduciary duty, the Plaintiff has sustained damages.

WHEREFORE, the Plaintiff requests that this Honorable Court enter judgment against the Defendant for his breach of fiduciary duty and award the Plaintiff its damages as well as its reasonable costs and attorneys' fees, as well as any such other relief as this Court deems appropriate and just.

## COUNT IV
**Interference With Advantageous Business Relations - Heldman**

38. The Plaintiff incorporates the preceding paragraphs as if specifically set forth herein.

39. The Plaintiff had existing business relationships with third parties that the Defendant, Heldman, knew about and has in bad faith attempted to solicit away from the Plaintiff.

40. As a result of the Defendant's conduct, the Plaintiff has sustained and will continue to sustain damages.

WHEREFORE, the Plaintiff requests that this Honorable Court enter judgment against the Defendant for his interference with the Plaintiff's business relationships and award the Plaintiff its damages as well as its reasonable costs and attorneys' fees, as well as any such other relief as this Court deems appropriate and just.

## COUNT V
**Estoppel - Heldman**

41. The Plaintiff incorporates the preceding paragraphs as if specifically set forth herein.

42. The Plaintiff reasonably relied on the defendant's performance on the terms of his employment agreement.

43. The Plaintiff performed its obligations to the Defendant.

44. The Defendant has retained the benefit of the Plaintiff's performance but has not performed on its corresponding obligations not to compete with, or solicit the clients and employees of, the Plaintiff.

45. As a result of the Defendant's actions, the Plaintiff has suffered damages.

WHEREFORE, the Plaintiff requests that this Honorable Court enter judgment against the Defendant for his breach of the parties' agreement and award the Plaintiff its damages as well as its reasonable costs and attorneys' fees, as well as any such other relief as this Court deems appropriate and just.

**COUNT VI**
**Constructive Trust – All Defendants**

46. The Plaintiff incorporates the preceding paragraphs as if specifically set forth herein.

47. The Plaintiff employed Heldman, a trusted employee, as a Senior Health Policy Analyst, pursuant to their written Employment Agreement, attached as Exhibit 1.

48. Upon information and belief, while employed with the Plaintiff, and since leaving the company, the Defendant has violated the terms of the Employment Agreement by competing with the Plaintiff, and soliciting clients and employees.

49. By reason of this breach of fiduciary duty and the fraudulent and otherwise manner in which the Defendants have obtained profits from business solicited from the Plaintiff's clients, the Court can hold that the Defendants have no legal or equitable right, claim, or interest therein, and instead, that the Defendants are involuntary trustees holding said profits in constructive trust for the Plaintiff with the duty to convey the same to the Plaintiff forthwith.

WHEREFORE, the Plaintiff requests that this Honorable Court declare that the Defendants hold profits derived from the business from the Plaintiff's clients as a constructive trust for the Plaintiff's benefit, and award the Plaintiff its damages as well as its reasonable costs and attorneys' fees, as well as any such other relief as this Court deems appropriate and just.

## DEMAND FOR JURY TRIAL

The plaintiff demands a jury trial on all issues so triable.

Respectfully Submitted,

The Plaintiff,

HEDGEYE RISK MANAGEMENT, LLC

By its attorneys,

/s/Raipher D. Pellegrino
Raipher D. Pellegrino, BBO# 560614
*Pro Hac Vice* Pending
Edward A. Prisby, BBO# 655217
*Pro Hac Vice* Pending
Raipher D. Pellegrino Associates, P.C.
265 State Street
Springfield, MA 01103
(413) 746-4400
(413) 746-2816 (Facsimile)
rdp@rdpalaw.com
eap@rdpalaw.com


BONNER KIERNAN TREBACH & CROCIATA, LLP

/s/ Alan S. Block
Alan S. Block #431010
Nadia A. Patel #1019170
1233 20th Street, N.W.
Eighth Floor
Washington, D.C. 20036
(202) 712-7000
(202) 712-7100 (Facsimile)
ablock@bonnerkiernan.com
naptel@bonnerkiernan.com

## VERIFICATION OF FACTS

I, Michael Blum, verify under penalty of perjury that the forgoing is true and correct.

Dated this 17th day of May, 2016.

_____
Michael Blum