IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HEDGEYE RISK MANAGEMENT, LLC,

              Plaintiff,

        vs.

PAUL HELDMAN, et al.,

              Defendants.
_____/

Civil Action
No. 1:16-cv-0935

Washington, DC
June 7, 2018

9:41 a.m.

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

**APPEARANCES**

| | |
|---|---|
| **For the Plaintiff:** | **RAIPHER PELLEGRINO**  *(Via telephone)* |
| | **ANTHONY BONGIORNI**  *(Via telephone)* |
| | Raipher D. Pellegrino Associates |
| | 265 State Street |
| | Springfield, MA 01103 |
| | |
| **For the Defendants:** | **JOHN B. SIMPSON**  *(Via telephone)* |
| | Martin Wren, PC |
| | 400 Locust Avenue, Suite 1 |
| | Charlottesville, VA 22902 |

| | |
|---|---|
| **Court Reporter:** | **Jeff M. Hook, CSR, RPR** |
| | Official Court Reporter |
| | U.S. District & Bankruptcy Courts |
| | 333 Constitution Avenue, NW |
| | Room 4700-C |
| | Washington, DC  20001 |

Proceedings recorded by realtime stenographic shorthand;
transcript produced by computer-aided transcription.

1                      **P R O C E E D I N G S**

2              **DEPUTY CLERK:**  Civil action 16-935, Hedgeye Risk

3      Management, LLC versus Paul Heldman.  Will the parties

4      please identify themselves for the record starting with

5      plaintiff.

6              **MR. PELLEGRINO:**  Raipher Pellegrino and Anthony

7      Bongiorni.

8              **THE COURT:**  Good morning.

9              **MR. SIMPSON:**  Good morning, your Honor.  John

10     Simpson for the defendant Paul Heldman.

11             **THE COURT:**  Mr. Simpson, you're a little bit hard

12     to hear.  I don't know if you're on a speakerphone, but it

13     might be easier if you pick up.

14             **MR. SIMPSON:**  I'm on a speakerphone, I'll get off

15     the speakerphone.

16             **THE COURT:**  That's better.  So we were in the

17     process of going through the joint status report.  Who's

18     speaking for the plaintiffs?

19             **MR. PELLEGRINO:**  Your Honor, this is Raipher

20     Pellegrino.

21             **THE COURT:**  So Mr. Pellegrino, where were we?

22             **MR. PELLEGRINO:**  Your Honor, we were dealing with

23     the request pertaining to Ms. Simpson.  And just to clarify

24     where I left off, your Honor, there are two things that

25     we're requesting of the Court -- or permission to file a

1    more in-depth motion.  The first is to order that

2    Ms. Simpson produce the documents that were requested of

3    her.  There are 10 requests.  And just to refresh the

4    Court's memory from our last hearing, they were the same

5    requests that Raka Banerjee -- we gave to Ms. Banerjee that

6    she responded to for her deposition.

7         The second request would be after that's produced,

8    to allow us -- whether that's allowed or not allowed, to

9    allow us to reopen her deposition.  Because after we took

10   Ms. Simpson's deposition on March 7th, the defendant

11   produced e-mails, extensive e-mails -- I'm sorry, documents

12   which included e-mails between Ms. Simpson and Mr. Heldman

13   before January 21st, 2016 which is obviously the critical

14   period.  So we'd like to further inquire into those -- into

15   that -- those communications.  And obviously if the Court

16   allows the order for her to produce the documents that we're

17   requesting of her, to go over those.

18        Where we left off, Judge, and I'm assuming --

19   there was a request for part of the transcript from

20   Mr. Simpson.  But I assume the Court has -- it was -- I had

21   left off going over a series of e-mails between myself and

22   Attorney Simpson.

23        Does your Honor have that transcript?

24        **THE COURT:**  If you're talking about the transcript

25   from the deposition that Mr. Simpson filed, I have reviewed

1    that.

2              **MR. PELLEGRINO:**   I'm not aware of something

3    Mr. Simpson filed.   The courtroom stenographer apparently

4    produced eight pages from our hearing on the 1st.   That's

5    what I'm referring to.

6              **THE COURT:**   That I don't have in front of me, no.

7              **MR. PELLEGRINO:**   Okay.   The eight pages, your

8    Honor, were the e-mails that I went over with your Honor.

9    So I'm assuming -- and if you'd like me to refresh your

10   Honor on those e-mails, I can do that.   But just to put it

11   in reference, so we had a deadline to take these

12   depositions.   We had communications with Attorney Simpson

13   where he said that he would be representing his daughter,

14   and that provided the logistics were worked out, he would

15   accept service of the subpoena for her deposition.

16              We understood logistics to mean the date of the

17   deposition and location.   Ultimately we were able to agree

18   upon that the week before we took her deposition on

19   March 7th.   So we sent him the notice of deposition with the

20   document request on March 5th.   He responded saying that

21   essentially he would not accept service of it; that the

22   logistics had not been worked out.

23              And then there were a series of e-mails I went

24   through with your Honor.   This all starts on Monday,

25   March 5th.   And the deposition was taken on Wednesday,

1    March 7th.  So I was explaining to your Honor kind of the

2    predicament that we were in at that point.

3         Mind you, your Honor, that Ms. Simpson lives in

4    Hawaii, and we were under the understanding -- and I think

5    rightfully so, that Mr. Simpson being her father, who

6    ultimately did represent her at the deposition, was going to

7    accept service.  So I can't explain beyond the issue of what

8    logistics could have meant, and those were communications

9    between Mr. Simpson and Mr. Bongiorni.  Mr. Bongiorni had

10   the same understanding as I did, that it was date and

11   location.

12        In any event, the deponent testified that she saw

13   the requests for the first time the night before that she

14   met with her father and Mr. Heldman to prepare for the

15   deposition.  And I think I said an hour and a half.  When I

16   looked back at the transcript, your Honor, just to be

17   factual, she said an hour and 15 minutes; that they met from

18   9:00 and they arrived at the deposition about 10:35 or

19   10:40.  So somewhere between an hour and 15 minutes

20   timeframe before.  And that she had not had a chance to

21   review -- she didn't review the request for documents.

22        I had offered prior to the deposition a multitude

23   of options, one of which was to reschedule her deposition

24   for later in the week because she had -- they earlier had

25   indicated she would be available every day that week except

1   for Friday, to give them time to meet in person and get the

2   documents.  This is not an onerous document request.

3        THE COURT:  I'm sorry, let me just interrupt for a

4   second and back up for a second here.  Where is it?  I have

5   the docket open in front of me.  Where is it that you have

6   some evidence or statement that Mr. Simpson agreed to accept

7   service?  Can you point me to that?

8        MR. PELLEGRINO:  It's his e-mail to us on --

9        THE COURT:  No, no, no, can you give me --

10        MR. PELLEGRINO:  -- March 5th.

11        THE COURT:  Can you give --

12        MR. PELLEGRINO:  It was -- I'm sorry?

13        THE COURT:  Can you give me a docket reference?  I

14   want to look at the document.

15        MR. PELLEGRINO:  Well, I thought the purpose of

16   the conference call was for us to have permission to file a

17   motion and then we'd submit all the documents.  I didn't do

18   more pleadings because I didn't think your Honor -- my

19   understanding was that you didn't want us to file more

20   documents.  The e-mails I was reading to you I can submit to

21   the Court.

22        THE COURT:  If you have an e-mail in front of you,

23   can you read it to me slowly, please?

24        MR. PELLEGRINO:  Yes, your Honor.  This was from

25   Attorney Simpson to me on March 5th, 2018 at 5:48 p.m.

1    "Gents" -- and it's addressed to myself and Attorney

2    Bongiorni.  "Gents" --

3          **THE COURT:**  I'm sorry, hold on a second.  So this

4    is the March 5th, 5:48 p.m. -- you know, I don't know if you

5    get ECF notices, but Mr. Simpson has filed this stuff on the

6    docket.

7          **MR. PELLEGRINO:**  Your Honor, I didn't receive -- I

8    usually get a -- we get a prompt, and I did not receive one.

9          **THE COURT:**  Well, I don't understand that.  So I

10   have in front of me at 103-2 an e-mail from Mr. Simpson

11   dated March 5, 2018 at 5:48.

12         **MR. PELLEGRINO:**  That would be the e-mail, your

13   Honor.  And what it -- what I was relying upon as well,

14   "Anthony requested that I accept service of the subpoena.  I

15   never stated that I would."  There were conversations

16   where -- and then he goes on to say, further on clarifies

17   it, "I did state that provided the logistics were worked

18   out, I didn't see a problem with that."

19         Your Honor, the -- you know, maybe it's the

20   carefully chosen words, but I had -- there were

21   conversations leading up to this where we discussed the date

22   of her deposition, the timing.  We went over working on what

23   date works.  Never once did he indicate I'm not going to

24   accept -- I'm not going to accept notice of her deposition.

25   I mean, it's kind of disingenuous to schedule a time, date,

1    coordinate all that, and then at the same time saying, "I'm

2    not accepting it, but I'm going to be representing her."

3    You know, if we had prior to that gone out and tried to

4    serve her like we tried afterwards, then the argument would

5    be, you know, this is my daughter, this is very rude.  You

6    know, we're trying to deal professionally in a good faith

7    manner to move this forward.

8            So when we set something on the 5th, I said okay,

9    fine, you haven't had a chance to review it with your

10   daughter, fair enough.  Let's move it to another date.

11   Let's agree that you produce the documents at the

12   deposition.  Let's do a multitude of things, anything that

13   would work so we could stay within the deadline of discovery

14   and not have to come back and trouble the Court with it.

15   That was the effort that we were trying to make.  And I

16   think, Judge, it was made in good faith, and I think it's

17   evident from this series of e-mails.

18           **THE COURT:**  So what is it you did not have a

19   chance to ask about in deposition?

20           **MR. PELLEGRINO:**  Your Honor, the -- well, we don't

21   know what documents they'll produce in response to the

22   document requests.  So that would be the first thing.  And

23   then there may be new questions related only to those

24   documents.  But secondly, they produced -- the defendant,

25   Mr. Heldman, produced documents as I understand in the

1    hundreds after the deposition.  And most critically, they

2    included e-mails between Ms. Simpson and Mr. Heldman prior

3    to 1/21/16 that we didn't have the benefit of questioning

4    Ms. Simpson during or Mr. Heldman during their depositions.

5    And critically, during the depositions there was a great

6    deal of lack of memory as to communications between the two

7    parties prior to 1/21/16.

8              **THE COURT:**  What do those e-mails say that are --

9              **MR. PELLEGRINO:**  -- allow us to refresh and to

10   narrow that back in specifically to those communications.

11             **THE COURT:**  What do those e-mails say that are of

12   interest to you, the pre-separation e-mails?

13             **MR. BONGIORNI:**  Your Honor, this is Anthony

14   Bongiorni speaking.  Most of the e-mails that we're

15   interested in seem to relate to unnamed persons that we

16   think we know who they are, but we don't -- we can't say for

17   sure.  And we think that those persons are related to

18   Healthsperien which is the company that HSP took space from

19   when they started doing business and discussed an investment

20   agreement.

21             And if the e-mails are who we think they're with,

22   it would show that they -- both Sasha and Mr. Heldman had

23   plans to leave earlier than they stated; and that they were

24   making plans to compete earlier than they stated which would

25   go to the credibility of their testimony as to when they

1   were solicited, for both of them, and what their plans were

2   vis-a-vis staying at Hedgeye.

3           **THE COURT:**  Okay.  So Mr. Simpson, do you want to

4   respond to this?

5           **MR. SIMPSON:**  Yes, your Honor.

6           **THE COURT:**  I have reviewed your submission.

7           **MR. SIMPSON:**  Okay.  So what I do want to --

8   what's not part of my submission is basically how this

9   particular deposition came about.  And I did not submit, but

10  I'll read it slowly so that we all can be on the same page

11  here.  Back on February 2nd, I received an e-mail from

12  Mr. Bongiorni, very short, saying, "Hi John, are you willing

13  to accept service on Sasha's behalf of a depo subpoena by

14  e-mail?  Thanks."

15          And then I replied to Mr. Bongiorni the same day,

16  later that day saying:

17          "Anthony, I'm still waiting to receive

18          possible dates for your client's 30(b)(6) depo

19          which will occur before any of your depositions

20          since I requested it first.  I am also awaiting a

21          response to the issues I raised regarding your

22          client's failure to produce documents as requested

23          as well as for supplementation to your answers to

24          interrogatories.  Obviously before I will consent

25          to accept service by e-mail, we would need to work

1    out the logistics and scheduling.  Since we

2    haven't discussed when, where or how the

3    deposition will occur, it would not be prudent for

4    me to blindly agree to accept service.  This is a

5    particular concern in light of apparent past

6    efforts in this case to issue subpoenas without

7    proper service" -- I'm sorry, "without proper

8    notice.  Assuming we work out the logistics, I see

9    no reason why we won't, I would be willing to

10   accept service.  That said, I don't anticipate

11   moving ahead without reasonable reciprocity."

12        I then go on to say, "There's been a change to

13   Paul's schedule.  He will be unavailable from the 21st to

14   the 23rd but will probably be available otherwise."  So we

15   were trying to work out scheduling informally on these

16   depositions.

17        We were eventually able to agree -- I agreed to

18   make Ms. Simpson, my daughter, available in Washington, D.C.

19   on March 7th without a subpoena.  And that's -- and the

20   documents that I submitted, your Honor, what they show is

21   that less than two days -- less than 48 hours before the

22   deposition that we'd agreed to have for Ms. Simpson, I

23   received an e-mail -- actually at almost 5:30 p.m. on

24   Monday, March 5th with a company of a subpoena duces tecum

25   for my daughter.

1          And I do take issue with Mr. Pellegrino's

2     representation that the document requests -- the documents

3     requested were reasonable.  There are a number of them that

4     ask for any e-mail in a Gmail account between you and Paul

5     Heldman or Raka Banerjee for basically -- at least with

6     Ms. Banerjee, up until the current date.  It doesn't limit

7     the scope to any particular subject or matter, just any

8     e-mail between them for a period of time going from back in

9     2015 to the current date.

10         So when I received this, my response was we

11    haven't agreed to accept the subpoena.  I'm happy to make

12    her available without a subpoena if you wish to proceed that

13    way, and that's what we did.  And I provided to the Court

14    excerpts from the transcript of the deposition where the

15    issue came up.  And Mr. Pellegrino presented Ms. Simpson at

16    the deposition with I think it was Exhibit 106.  And on page

17    10 I stated clearly my objection saying, "No, this is

18    because" -- "No, because this is a document that is a

19    subpoena that has not been accepted, has not been served."

20    And Mr. Pellegrino answers, "Uh-huh," which to me was an

21    affirmation of what I was saying.  And I go on to say, "And

22    we have discussed this between counsel in terms of

23    addressing this."  And Mr. Pellegrino answers, "I

24    understand, and I certainly have no issue with that.  I

25    just -- I'm just asking her about the document, that's all."

1           And then later on it comes up, and I wasn't clear

2      what Mr. Pellegrino was attempting to do with this subpoena.

3      And I stated, starting on page 295, "And that if you're

4      saying that she has been served with this document today at

5      her deposition today, then I'd like to hear somebody say

6      that.  There's no question that we have a copy of it."  And

7      Mr. Pellegrino's response was not yes, I am taking the

8      position that she's been served with a subpoena today.  No,

9      he says, "All I'm asking her to do is read Exhibit 106,

10     please, and let me know when you've completed reading

11     Exhibit 106 which is the subpoena duces tecum for you."

12           **THE COURT:**  Let me ask you --

13        **MR. SIMPSON:**  He asked her to read every page, et

14     cetera.  And he says -- there's no talking, he says, "She's

15     told me she hasn't read it, so I'd like to her to read it."

16           **THE COURT:**  I'm sorry, may I interrupt for just a

17     moment.  Let me ask you, was the first time that you saw a

18     document request that was directed to Sasha Simpson less

19     than 48 hours before her deposition?

20        **MR. SIMPSON:**  That's right, your Honor.  And my

21     understanding going into this is that we were not -- her

22     deposition was not being taken pursuant to the subpoena.

23     Had I known that they were taking the position that she was

24     served with that subpoena at the deposition, I would have

25     moved to quash it and asked for a protective order.  And,

1    you know, as far as I'm concerned, there was a duty to

2    speak.  And if their position was that yes, we are taking

3    the position that she's been served with a subpoena, to not

4    speak under those circumstances to me is really comparable

5    to being engaged in some sort of deceit.

6              **THE COURT:**  Well, let me go back to Mr. Pellegrino

7    for a minute.

8              Mr. Pellegrino, how could you have possibly

9    thought that you were actually going to get documents in

10   advance of the deposition that you were scheduling where you

11   didn't serve a request for a document production or a

12   subpoena for documents until less than 48 hours before the

13   deposition was scheduled to occur?

14             **MR. PELLEGRINO:**  Your Honor, because I thought

15   that they would -- they're not that extensive.  We served

16   them timely under the rule.  And that's why I offered to put

17   it off for a later date.  I told them let's do another date.

18   You can even produce them after the deposition if you'd

19   like.  I was going out of my way to try to work within the

20   deadlines the Court imposed and trying to accommodate both

21   Mr. Simpson and his daughter's schedules.

22             **THE COURT:**  Well, I --

23             **MR. PELLEGRINO:**  We put off the timing of them

24   because there were vacations and things of that nature prior

25   to that.  And we were just trying to -- I was trying to

1   accommodate her.  Now, could the notice have been sent over

2   at an earlier date?  But we'd only come up with the date for

3   the deposition just the end of the week before.  So Attorney

4   Bongiorni sent it out on Monday.  Certainly, Judge, it could

5   have come out earlier.  But I didn't take the position that

6   look, if you don't produce them by this date I'm going to

7   move forward.

8           And when we were in that deposition, I was very

9   clear outside of it and before it that we gave the

10  deposition -- that we -- if you read those e-mails between

11  myself and Attorney Simpson from the 5th up until the time

12  of the deposition, I don't know what else I could have done.

13  I could have just said okay, let's go into court, forget

14  about this.  I was trying to resolve it in a very amicable

15  fashion.

16          To date, the scope -- there was never an objection

17  on the scope of the documents or anything of that nature, it

18  was just I'm not accepting it.  And that's why I had her

19  read it.  Because under the rule, I believe at least as to

20  the documents, I've complied with the requirements of it.

21  But putting that aside, I even said look, let's do it -- get

22  them to me next week.  We're over a month -- almost two

23  months afterwards now and I still don't -- there's never --

24  I could have filed a motion for compliance, but I'd have to

25  come before the Court first.

1        I was just -- all I'm trying to do is get

2   the documents which are reasonably necessary.  If the scope

3   was too broad, he's never -- until right now is the first

4   time I've heard this is too -- these are too broad,

5   extensive.  I haven't heard any objection, I haven't seen

6   anything.  And --

7        **THE COURT:**  I'm sorry, hello, hello, hello.

8   Because we're on the telephone, I'm going to make you all

9   come back in for the next status conference.  I can't get a

10  word in because you all start talking, and you go on for

11  excessive lengths very rapidly -- too rapidly by the way for

12  the court reporter -- but in a way in which the Court can't

13  get a word in edgewise.  So you've got to slow down and give

14  me a chance to ask questions, because if we're on the phone

15  you don't even know when I have a question.

16       Let me ask you this:  You just said a moment ago

17  that they could even produce the documents after the

18  deposition if they like.  You served a document request less

19  than 48 hours before the deposition which you assert is

20  timely under the rule.  I don't think it is, because I think

21  you have to provide a reasonable amount of time to produce

22  documents.  And I don't see how less than 48 hours is

23  possibly a reasonable amount of time to produce anything

24  other than a very, very discrete set of documents which

25  these do not appear to be.  You've just told me now that you

1   made the decision to go forward with the deposition, and

2   that you said they can produce them after the deposition.

3        So I guess my question is does that then at least

4   decouple the question for production of the documents from

5   reopening the deposition, and that we can just take up the

6   question of whether the defendant needs to produce

7   documents -- or rather whether Sasha Simpson needs to

8   produce documents separate from the -- whether that then

9   requires the reopening of the deposition?  Because you just

10  told me that you told them they can go ahead and produce the

11  documents after the deposition.

12      **MR. PELLEGRINO:**  That is correct, your Honor.

13  That would decouple it from -- and that was something -- it

14  obviously wasn't my first preference, but I certainly did

15  offer it.  I can't -- I certainly would not represent

16  otherwise, so that would.  It would not necessarily

17  eliminate completely the need even for a short period to

18  reopen Ms. Simpson's deposition as it relates to documents

19  produced by Mr. Heldman after the depositions were taken.

20      However, we have very limited areas to ask about

21  which we probably could resolve either with counsel or

22  through simple written requests.  Because we can narrow them

23  down if the Court were trying to just, you know, eliminate

24  the necessity of retaking her deposition.  I'm happy to do

25  it the most practical way.

1          So just so I'm clear, the first one is I do agree,

2     your Honor, that it would decouple the production of

3     documents from further taking her deposition.  And then the

4     second one would be we would still have questions related to

5     documents produced by the defendant after the depositions.

6     And I have not -- there's been no explanation to me as to

7     any reason why they couldn't have been produced prior to the

8     deposition.

9          **THE COURT:**  Well, I can tell you why the documents

10    that were requested in the subpoena could not have been

11    produced beforehand is because you gave them less than 48

12    hours notice.  I cannot think in my years of practice of any

13    time that I ever produced documents to anybody in anything

14    close to 48 hours from a request.

15         **MR. PELLEGRINO:**  Your Honor, I apologize, I wasn't

16    referring to those.  I was referring to the documents from

17    the defendant that had been requested in the requests for

18    production of documents much earlier and had been produced

19    prior to the deposition.

20         **THE COURT:**  I see, okay.

21         **MR. PELLEGRINO:**  They sent a second batch of

22    documents out after the depositions were taken, and that's

23    what I was referring to.  I apologize if I wasn't clear.

24         **THE COURT:**  So let me say this:  With respect to

25    the subpoena, it's unfortunate that the parties have not

1    been able to work the issue out.  But based on what I've

2    heard, there was a conditional offer to accept service.  And

3    by the time the subpoena was served, Mr. Simpson was clear

4    that he was not accepting service at that time.  And so I do

5    think that you don't have an agreement from him on the

6    record as I understand it to accept service.  And either he

7    agrees now to do so or if you want to serve a subpoena for

8    documents, you're going to have to serve her.  You're going

9    to have to get a subpoena that issues from the jurisdiction

10   where she is located for purposes of doing that if

11   Mr. Simpson doesn't accept service.  There's a separate

12   question about whether the subpoena is overbroad.

13          But what I'm going to do just for purposes of

14   today is, as I said before, decouple the question of

15   production of documents in response to the subpoena from the

16   question of whether that merits reopening of the deposition.

17   And I'll direct that the parties meet and confer about

18   whether there is some subset of documents that Ms. Simpson

19   can reasonably produce in response to a subpoena or to do so

20   voluntarily.

21          And if you're unable to reach agreement on that, I

22   think then I will allow you to go ahead and will allow

23   discovery to continue for a brief period of time to allow

24   you to attempt to serve a subpoena.  I would just urge you

25   in doing that, before you go through the exercise of serving

1    it and getting a response that it's overbroad, think about

2    what it is that you really absolutely need in the case and

3    keep it as targeted as you possibly can.  And if you do

4    that, perhaps Mr. Simpson can then work with you in a way

5    that will get you what you need.

6              **MR. PELLEGRINO:**  Thank you, your Honor.

7              **THE COURT:**  With respect to the reopening of the

8    deposition, I guess I need more detail on whether that's

9    appropriate or not.  I would need to see what the specific

10   documents are that you want to ask about, and understand why

11   it is that you were not able to ask those questions in the

12   earlier deposition if there were not, for example, similar

13   documents that you couldn't ask about or understand why they

14   would not have fallen within the scope of your examination

15   previously.

16             Again, what I'll do on this though is direct that

17   the parties meet and confer on this as well.  If there are a

18   couple of questions that you have that could be answered

19   perhaps by declaration instead, and Mr. Simpson on looking

20   at those agrees that they're reasonable questions with

21   respect to those documents, perhaps there's a way that you

22   could proceed in a more expeditious manner rather than

23   reopening the deposition to do that.

24             So for present purposes, I'm just going to direct

25   that the parties meet and confer.  But in doing that, I

1    think you're going to need to identify for Mr. Simpson

2    precisely which documents exist that you want to ask about,

3    and explain to him why it is you could not have asked those

4    questions earlier.  If you're unable to reach an agreement

5    about some way of handling that, then we'll just have to

6    have another status conference and I'll decide whether the

7    deposition should be reopened for a brief period of time in

8    light of that.

9              **MR. PELLEGRINO:**  Thank you, your Honor.

10             **THE COURT:**  Okay, what's the next issue?

11             **MR. PELLEGRINO:**  Your Honor, the next issue is for

12   leave of court to amend the complaint.  And there are two

13   reasons why we would like to move to amend the complaint,

14   file a motion for such.  The first is to restate in more

15   specificity from additional information we learned through

16   discovery the breach of fiduciary duty.  And the second one

17   would be to add Ms. Simpson as a third party for the tort of

18   spoliation of evidence.

19             There was -- the evidence is that she destroyed

20   her Apple computer.  Her Apple computer is the computer she

21   used on January 21st, 2016 while they were setting up their

22   new business to -- after they had left the employ of Hedgeye

23   so I'm clear, later that afternoon while they were setting

24   up their new business and for whatever period of time

25   thereafter.

1          And the notice of -- the litigation hold notice

2     was sent on January 28th, 2016.  Ms. Simpson was unclear

3     about when she saw that notice.  Mr. Heldman acknowledges he

4     received it at or around that date, January 28th, 2016.  And

5     that Apple computer is gone, there's no way of -- the

6     information was not preserved and there's no way of

7     obtaining it.

8          So we would ask for permission to amend the

9     complaint for those two reasons.

10         **THE COURT:**  Mr. Simpson?

11         **MR. SIMPSON:**  Obviously I'm going to object to

12    them be given leave to further amend the complaint.  I think

13    we're on at least the third complaint now, and now they want

14    to somehow re-allege the breach of fiduciary duty claim.  I

15    don't think that that's appropriate under the circumstances.

16    They've been given leave, they should not be given leave

17    again.

18         I am concerned -- and I mentioned it last Friday

19    when we were in court, that there was a representation that

20    they would be willing to drop the solicitation component

21    of the solicitation -- or the breach of fiduciary duty claim

22    if they don't find any evidence in discovery.  That's

23    particularly concerning in this case.

24         With respect to this third party spoliation claim,

25    there's no basis for that.  I think the Holmes case I

1    believe, 710 A.2d 846, is where that tort is recognized.

2    And the Court -- there has to be a special relationship or

3    duty that would require that Ms. Simpson preserve evidence

4    that would benefit Hedgeye, and there's no basis for that.

5    And I don't want to continue to enable Hedgeye to file

6    baseless claims.

7            So I object to them being granted any leave to

8    amend their complaint at this point.

9            **MR. PELLEGRINO:**  Your Honor, if I could just

10   respond to one point?

11           **THE COURT:**  You may.

12           **MR. PELLEGRINO:**  They're partners in an LLC that

13   even the most conservative review of the testimony or

14   evidence produced thus far is something that they had

15   discussed prior to their departure from Hedgeye, and started

16   literally within hours of the time they gave their -- well,

17   at least with respect to Ms. Simpson, her termination.  With

18   respect to Mr. Heldman, there's a dispute as to whether he

19   was terminated or he resigned.

20           Under Holmes, that coupled with the clear --

21   there's no dispute that the Apple computer was destroyed and

22   the evidence wasn't preserved.

23           **THE COURT:**  What happened to the computer?

24           **MR. SIMPSON:**  I think there's some confusion here,

25   and I'll just read from the Holmes decision.  It says -- I'm

1   trying to figure out what page this is.  I believe it's at

2   page 849:

3           "Absent some special relationship or duty

4       rising by reason of an agreement, contract,

5       statute or other special circumstance, the general

6       rule is that there is no duty to preserve possible

7       evidence for another party to aid that other party

8       in some future legal action against the third

9       party.  The plaintiff must establish the existence

10      of such a special relationship that creates a duty

11      to preserve the evidence for use in the future

12      litigation."

13          And there's no duty, there was never any duty that

14  Ms. Simpson preserve evidence to benefit Hedgeye in some

15  future claim that Hedgeye might have.

16          **THE COURT:**  I take it that the computer was

17  destroyed after Ms. Simpson left Hedgeye, is that correct?

18          **MR. PELLEGRINO:**  Correct, they used it the day

19  they left, and it was destroyed at some point after that

20  day.

21          **MR. SIMPSON:**  I'm not sure destroyed is the right

22  word for it.  I think it probably stopped working.  But in

23  any event, it's no longer around.

24          **THE COURT:**  What happened to it?

25          **MR. SIMPSON:**  I think what happened with it is it

1   just wasn't working with well.  They bought new computers

2   after they started their business.  I can't remember exactly

3   what model it was, but as I recall it's sort of a hybrid

4   tablet laptop.

5         MR. PELLEGRINO:  Your Honor, it was a MacBook Air.

6   And if I recall her testimony correctly, she doesn't

7   remember what happened to it.

8         THE COURT:  So Mr. Pellegrino, I take it under

9   Holmes that the duty is one that has to run from Ms. Simpson

10  to Hedgeye, correct?

11        MR. PELLEGRINO:  I don't know that I read it that

12  way.  The way I understood it is that this is a third

13  party -- well, I guess, yes, let me restate it.  This is a

14  third party, Ms. Simpson, who is -- has the same lawyer as

15  the defendant; who is starting -- who discusses -- or at

16  least has discussions with the defendant prior to leaving

17  Hedgeye that on the same day utilizes the computer to

18  establish a new business with clients that are acknowledged

19  to be Hedgeye clients; that the -- Mr. Heldman acknowledges

20  receiving the litigation hold letter seven days later.  And

21  they are working from -- you know, and I'm generally quoting

22  the evidence, on a daily basis with one another.  She

23  participates in assisting him with discovery at different

24  points through this case.  Clearly at the outset of the

25  case, their LLC was a defendant related to the breach of

1    contract claim.

2            So I think that there clearly is a special

3    circumstance here.  I think those are factual issues that

4    would be vetted out either during discovery or if we went to

5    a trial.  But there's clearly I believe under Holmes more

6    than ample evidence to bring this count -- to add this count

7    to a complaint with respect to Ms. Simpson.  I mean, we

8    can't recover that information.  That information is gone.

9    There's no requirement that we be able to specifically show

10   what that information was.

11           But we know in this case that that was the

12   computer where the ESI was on related to taking all of these

13   clients and establishing it in the most close time period

14   prior to their departure.

15           **THE COURT:**  What is ESI?

16           **MR. PELLEGRINO:**  Electronically stored

17   information, your Honor.

18           **THE COURT:**  And how do you know it was on that

19   computer?

20           **MR. PELLEGRINO:**  She testified she used that

21   computer that afternoon when they were gathering all of

22   their clients, trying to put together all their clients they

23   used to set up their new business.

24           **MR. BONGIORNI:**  Your Honor, this is Anthony

25   Bongiorni.  In particular, that client spreadsheet that was

1   created, because an original no longer exists we aren't able

2   to determine who added what to it when, when it was created,

3   et cetera.  All the metadata that exists in the original

4   copy is gone.

5           **THE COURT:**  Well, I don't think I'm in a position

6   in which I can rule on whether the plaintiffs can amend

7   simply based on the parties' oral representations here.  So

8   I will go ahead and allow the plaintiffs to file a motion,

9   if you want to, for leave to amend.  I would caution you

10  though in doing so to really be quite sure that you have a

11  good faith basis for whatever you're alleging; and to look

12  carefully at the Holmes opinion -- which I obviously have

13  not looked at and it's just been described to me here.  But

14  to make sure that it supports the notion that even at a time

15  in which the individual who allegedly has destroyed the

16  evidence is no longer employed by the party that is

17  asserting -- or alleging the tort, that a sufficient

18  relationship or duty exists with respect to preservation of

19  evidence.

20          I think this is all separate and apart from the

21  questions that plaintiffs have raised with respect to

22  preservation of evidence, and whether there's a basis for

23  drawing an adverse inference relating to evidence that was

24  not preserved.  This is a question of whether there is an

25  independent tort.  And so if you are going to allege it, be

1    very careful to make sure that you actually have a good

2    faith basis for doing so.

3            And if you're also amending the complaint or

4    seeking leave to amend the complaint, I would say again you

5    need to revisit your Rule 11 obligations.  And if you are

6    now once again re-alleging the fiduciary duty claims, you

7    have more information in front of you that might provide

8    some basis for you to refine those claims.  But it also I

9    think puts heightened obligations on you to say I now have

10   the bulk of the discovery that I'm going to obtain in this

11   case, and do I think there is a good faith basis for going

12   forward based on what I know.

13           This is no longer a circumstance involving a party

14   who has yet to take any discovery who is making allegations,

15   and they have to speculate somewhat in making those

16   allegations.  You have the information that you're going to

17   have by and large in front of you now, and you need to make

18   sure you have a good faith basis for doing so.

19           But with that said, I will at this point just

20   allow you to file a motion for leave to amend.  And

21   obviously the defendant and Ms. Simpson, if she chooses to

22   do so, can file an opposition to that motion, okay?

23           **MR. PELLEGRINO:**  Thank you, your Honor.

24           **THE COURT:**  What's next?

25           **MR. PELLEGRINO:**  Your Honor, the next one is --

1    and I don't think -- and I don't want to answer for Attorney

2    Simpson.  I don't think there's an objection to this, but I

3    think just the timing is the question.  So I just want to --

4    it would be a motion for discovery sanctions including an

5    adverse inference.  And that specifically goes to the ESI

6    which again, your Honor, is the electronically stored

7    information that was destroyed by Mr. Heldman.  There were

8    six thumb drives as you may recall, three of which he said

9    he destroyed I think the day before he left.  But in any

10   event, he alleges while he was employed.  The other three he

11   doesn't know -- from the testimony, what I understand is he

12   doesn't know what happened to them.

13         Mr. Heldman also testified that he regularly

14   deleted texts, and that he communicated with Ms. Heldman

15   (sic) and Ms. Banerjee via text regarding starting this new

16   company or their connection.  Also, the only efforts to

17   preserve evidence was to save e-mails related to starting a

18   new business, only that.  And that he did not give any

19   instructions to either Ms. Simpson or Ms. Banerjee to

20   preserve e-mails with the new company Heldman Simpson

21   Partners.

22         So I don't know that we -- that would just be the

23   factual basis.  We would like at the appropriate time to

24   raise that issue.  And if I understood the defendant's

25   opposition, it was fine, do it when it's appropriate, but

1    the time's not appropriate now.

2            So I just want to understand from the Court if we

3    have permission to do that, and when that would happen.

4            **THE COURT:**  Mr. Simpson?

5            **MR. SIMPSON:**  I'm sorry, did you ask me something?

6            **THE COURT:**  Yes, I just asked you to respond.

7            **MR. SIMPSON:**  Oh, I'm sorry.  Yeah, I think if

8    they're looking -- I'm not sure exactly what they're looking

9    for here, but if they're looking for a spoliation

10   instruction, I think that would be something that would be

11   made down the road if we get there.  Obviously we have a

12   very different view of this.

13           My understanding and recollection of the evidence

14   was that they had Mr. Heldman's laptop forensically

15   examined, inspected, and whoever did that examination

16   apparently determined that they were -- there were six

17   different thumb drives or devices that were inserted into

18   the computer.  And I believe that Mr. Heldman only

19   recognized two or three of them.  And his testimony was that

20   when he was getting ready to leave, he plugged those in and

21   they were corrupted and he disposed of them.  So it's prior

22   to the January 28th letter that Mr. Pellegrino sent that was

23   basically asserting a breach of contract claim and not to --

24   and as I recall, it had to do with documents related to that

25   breach of contract claim.

1          So I think there are a lot of concerns we have

2    with some sort of blanket argument here.  And to the extent

3    that they want to get a spoliation instruction for the jury

4    in this case, then that should be brought up at the

5    appropriate time and properly briefed.

6          **MR. PELLEGRINO:**  Your Honor, if I could just with

7    respect to the time?

8          **THE COURT:**  Yes.

9          **MR. PELLEGRINO:**  We would want this, your Honor,

10   to relate to our opposition for the summary judgment.  So

11   just when we're talking about timing, if the Court could

12   consider that.  Clearly if they were allowed, it would be

13   something that we would use in opposition to the defense

14   motion for summary judgment which has already been filed.

15         **THE COURT:**  So why can't you just --

16         **MR. SIMPSON:**  There's no reason they can't do that

17   anyway.

18         **THE COURT:**  Well, I was going to say why not just

19   raise that in the context of your opposition to the motion

20   for summary judgment and to say --

21         **MR. PELLEGRINO:**  We can, your Honor, but because

22   of the procedures, the way -- I'm just trying to make sure

23   we comply with how the Court wants things to happen so it's

24   not a surprise.  We have no problem doing that.  But

25   generally you would raise it either at trial or by motion,

1   so that's -- we can put it within the summary judgment

2   opposition.

3           THE COURT:  Mr. Simpson, any objection to -- I

4   mean, I know you object on the substance, but procedurally

5   any objection to them just raising it in that context?  Do

6   you think they need to raise it in a separate motion?

7           MR. SIMPSON:  No, I think that's totally

8   appropriate.  If they want to raise it as seeking some sort

9   of inference with respect to the summary judgment issues,

10  that's -- I don't see any reason why they can't do that.

11          THE COURT:  Okay, so why don't we leave it that

12  way for now.  And if when I look at this I conclude that

13  there's a need for a hearing on the issue, I will address it

14  in that context.  And it may be that once I look at

15  whatever's briefed, that I'll conclude there's a need for

16  further briefing or a hearing on it.  But for present

17  purposes, I think that the plaintiffs, if they want to do

18  so, can raise the issue in opposition to summary judgment.

19          MR. PELLEGRINO:  Thank you, your Honor.  The last

20  issue which I think is more just a scheduling issue, I

21  guess, Judge, in light of how -- what I understand your

22  orders are today would request that we move the response

23  date for the plaintiffs to respond to the defendants' motion

24  for summary judgment to a later date.  And we would also

25  request permission to file on summary judgment with respect

1    to plaintiff's motion for summary judgment.  So those are

2    just scheduling questions I had, your Honor.

3            **THE COURT:**  Well, if you want to file a

4    cross-motion for summary judgment, you're welcome to do so.

5            **MR. PELLEGRINO:**  Okay.

6            **THE COURT:**  And with respect to timing, I hate to

7    do this, but I think what we need to do just to keep the

8    trains on schedule here is to set a further status

9    conference so I can check in on these handful of issues that

10   I hope the parties will be able to resolve amongst

11   themselves with respect to discovery.  But if not, for me to

12   be able to resolve those so we can keep things moving.

13           So let me see if I can find a date here, hold on

14   just a moment.  So June 27th at 2:00 p.m., and we can do

15   this telephonically again.

16           **MR. PELLEGRINO:**  Thank you, your Honor.

17           **THE COURT:**  So I will toll or stay your time to

18   respond to the pending motion for summary judgment until

19   June 27th, and we'll take it up then.

20           **MR. PELLEGRINO:**  Thank you, your Honor.

21           **THE COURT:**  Mr. Simpson, anything further you

22   wanted to raise today?

23           **MR. SIMPSON:**  No, your Honor.

24           **THE COURT:**  Okay.  Well, thank you all.

25       (Proceedings adjourned at 10:27 a.m.)

# C E R T I F I C A T E

I, **Jeff M. Hook, CSR, RPR,** certify that the
foregoing is a correct transcript from the record of
proceedings in the above-entitled matter.

__June 15, 2018__                    _____

**DATE**                         **Jeff M. Hook, CSR, RPR**

**0**

01103 [1]   1/14
0935 [1]   1/4

**1**

1/21/16 [2]   9/3 9/7
10 [2]   3/3 12/17
103-2 an [1]   7/10
106 [3]   12/16 13/9 13/11
10:27 a.m [1]   33/25
10:35 [1]   5/18
10:40 [1]   5/19
11 [1]   28/5
15 [2]   5/17 5/19
16 [2]   9/3 9/7
16-935 [1]   2/2
1:16-cv-0935 [1]   1/4
1st [1]   4/4

**2**

20001 [1]   1/23
2015 [1]   12/9
2016 [4]   3/13 21/21 22/2
   22/4
2018 [3]   1/5 6/25 7/11
21st [3]   3/13 11/13 21/21
22902 [1]   1/17
23rd [1]   11/14
265 [1]   1/14
27th [2]   33/14 33/19
28th [3]   22/2 22/4 30/22
295 [1]   13/3
2:00 p.m [1]   33/14
2nd [1]   10/11

**3**

30 [1]   10/18
333 [1]   1/22

**4**

400 [1]   1/17
4700-C [1]   1/22
48 [7]   11/21 13/19 14/12
   16/19 16/22 18/11 18/14

**5**

5:30 p.m [1]   11/23
5:48 [1]   7/11
5:48 p.m [2]   6/25 7/4
5th [8]   4/20 4/25 6/10
   6/25 7/4 8/8 11/24 15/11

**7**

710 [1]   23/1
7th [4]   3/10 4/19 5/1
   11/19

**8**

846 [1]   23/1
849 [1]   24/2

**9**

935 [1]   2/2
9:00 and [1]   5/18
9:41 [1]   1/6

**A**

A.2d [1]   23/1
a.m [2]   1/6 33/25
able [8]   4/17 11/17 19/1

20/11 26/9 27/1 33/10
33/12
about [16]   3/24 5/18 8/19
   10/9 12/25 15/14 17/20
   19/12 19/17 20/1 20/10
   20/13 21/2 21/5 22/3 31/11
above [1]   34/5
above-entitled [1]   34/5
Absent [1]   24/3
absolutely [1]   20/2
accept [15]   4/15 4/21 5/7
   6/6 7/14 7/24 7/24 10/13
   10/25 11/4 11/10 12/11
   19/2 19/6 19/11
accepted [1]   12/19
accepting [3]   8/2 15/18
   19/4
accommodate [2]   14/20 15/1
account [1]   12/4
acknowledged [1]   25/18
acknowledges [2]   22/3
   25/19
action [3]   1/3 2/2 24/8
actually [3]   11/23 14/9
   28/1
add [2]   21/17 26/6
added [1]   27/2
additional [1]   21/15
address [1]   32/13
addressed [1]   7/1
addressing [1]   12/23
adjourned [1]   33/25
advance [1]   14/10
adverse [2]   27/23 29/5
affirmation [1]   12/21
after [14]   3/7 3/9 9/1
   14/18 16/17 17/2 17/11
   17/19 18/5 18/22 21/22
   24/17 24/19 25/2
afternoon [2]   21/23 26/21
afterwards [2]   8/4 15/23
again [6]   20/16 22/17 28/4
   28/6 29/6 33/15
against [1]   24/8
ago [1]   16/16
agree [5]   4/17 8/11 11/4
   11/17 18/1
agreed [4]   6/6 11/17 11/22
   12/11
agreement [5]   9/20 19/5
   19/21 21/4 24/4
agrees [2]   19/7 20/20
ahead [4]   11/11 17/10
   19/22 27/8
aid [1]   24/7
aided [1]   1/25
Air [1]   25/5
al [1]   1/6
all [15]   4/24 6/17 8/1
   10/10 12/25 13/9 16/1 16/8
   16/10 26/12 26/21 26/22
   27/3 27/20 33/24
allegations [2]   28/14
   28/16
allege [2]   22/14 27/25
allegedly [1]   27/15
alleges [1]   29/10
alleging [3]   27/11 27/17
   28/6
allow [8]   3/8 3/9 9/9
   19/22 19/22 19/23 27/8

28/20
allowed [3]   3/8 3/8 31/12
allows [1]   3/16
almost [2]   11/23 15/22
already [1]   31/14
also [6]   10/20 28/3 28/8
   29/13 29/16 32/24
am [3]   10/20 13/7 22/18
amend [9]   21/12 21/13 22/8
   22/12 23/7 27/6 27/9 28/4
   28/20
amending [1]   28/3
amicable [1]   15/14
amongst [1]   33/10
amount [2]   16/21 16/23
ample [1]   26/6
another [5]   8/10 14/17
   21/6 24/7 25/22
answer [1]   29/1
answered [1]   20/18
answers [3]   10/23 12/20
   12/23
ANTHONY [6]   1/13 2/6 7/14
   9/13 10/17 26/24
anticipate [1]   11/10
any [18]   5/12 10/19 12/4
   12/7 12/7 16/5 18/7 18/12
   22/22 23/7 24/13 24/23
   28/14 29/9 29/18 32/3 32/5
   32/10
anybody [1]   18/13
anything [6]   8/12 15/17
   16/6 16/23 18/13 33/21
anyway [1]   31/17
apart [1]   27/20
apologize [2]   18/15 18/23
apparent [1]   11/5
apparently [2]   4/3 30/16
appear [1]   16/25
APPEARANCES [1]   1/11
Apple [4]   21/20 21/20 22/5
   23/21
appropriate [7]   20/9 22/15
   29/23 29/25 30/1 31/5 32/8
are [23]   2/24 3/3 9/8 9/11
   9/16 9/17 9/21 10/12 12/3
   14/2 16/2 16/4 20/10 20/17
   21/12 25/18 25/21 26/3
   27/25 28/5 31/1 32/22 33/1
areas [1]   17/20
aren't [1]   27/1
argument [2]   8/4 31/2
around [2]   22/4 24/23
arrived [1]   5/18
as [25]   5/10 7/13 8/25 9/6
   9/25 10/22 10/23 10/23
   14/1 14/1 15/19 17/18 18/6
   19/6 19/14 20/3 20/3 20/17
   21/17 23/18 25/3 25/14
   29/8 30/24 32/8
aside [1]   15/21
ask [13]   8/19 12/4 13/12
   13/17 16/14 16/16 17/20
   20/10 20/11 20/13 21/2
   22/8 30/5
asked [4]   13/13 13/25 21/3
   30/6
asking [2]   12/25 13/9
assert [1]   16/19
asserting [2]   27/17 30/23
assisting [1]   25/23

**A**

Associates [1]   1/13
assume [1]   3/20
assuming [3]   3/18 4/9 11/8
at [41]
attempt [1]   19/24
attempting [1]   13/2
Attorney [7]   3/22 4/12
 6/25 7/1 15/3 15/11 29/1
available [4]   5/25 11/14
 11/18 12/12
Avenue [2]   1/17 1/22
awaiting [1]   10/20
aware [1]   4/2

**B**

back [8]   5/16 6/4 8/14
 9/10 10/11 12/8 14/6 16/9
Banerjee [6]   3/5 3/5 12/5
 12/6 29/15 29/19
Bankruptcy [1]   1/21
based [3]   19/1 27/7 28/12
baseless [1]   23/6
basically [3]   10/8 12/5
 30/23
basis [10]   22/25 23/4
 25/22 27/11 27/22 28/2
 28/8 28/11 28/18 29/23
batch [1]   18/21
be [38]
because [17]   3/9 5/24 6/18
 12/18 12/18 14/14 14/24
 15/19 16/8 16/10 16/14
 16/20 17/9 17/22 18/11
 27/1 31/21
been [17]   4/22 11/12 12/19
 12/19 13/4 13/8 14/3 15/1
 18/6 18/7 18/10 18/17
 18/18 19/1 22/16 27/13
 31/14
before [17]   1/9 3/13 4/18
 5/13 5/20 10/19 10/24
 11/21 13/19 14/12 15/3
 15/9 15/25 16/19 19/14
 19/25 29/9
beforehand [1]   18/11
behalf [1]   10/13
being [4]   5/5 13/22 14/5
 23/7
believe [5]   15/19 23/1
 24/1 26/5 30/18
benefit [3]   9/3 23/4 24/14
better [1]   2/16
between [10]   3/12 3/21 5/9
 5/19 9/2 9/6 12/4 12/8
 12/22 15/10
beyond [1]   5/7
bit [1]   2/11
blanket [1]   31/2
blindly [1]   11/4
BONGIORNI [10]   1/13 2/7
 5/9 5/9 7/2 9/14 10/12
 10/15 15/4 26/25
both [3]   9/22 10/1 14/20
bought [1]   25/1
breach [6]   21/16 22/14
 22/21 25/25 30/23 30/25
brief [2]   19/23 21/7
briefed [2]   31/5 32/15
briefing [1]   32/16

bring [1]   26/6
broad [2]   16/3 16/4
brought [1]   31/4
bulk [1]   28/10
business [7]   9/19 21/22
 21/24 25/2 25/18 26/23
 29/18
but [36]

**C**

call [1]   6/16
came [2]   10/9 12/15
can [27]   4/10 6/7 6/9 6/11
 6/13 6/20 6/23 10/10 14/18
 17/2 17/5 17/10 17/22 18/9
 19/19 20/3 20/4 27/6 27/6
 28/22 31/21 32/1 32/18
 33/9 33/12 33/13 33/14
can't [10]   5/7 9/16 16/9
 16/12 17/15 25/2 26/8
 31/15 31/16 32/10
cannot [1]   18/12
careful [1]   28/1
carefully [2]   7/20 27/12
case [9]   11/6 20/2 22/23
 22/25 25/24 25/25 26/11
 28/11 31/4
caution [1]   27/9
certainly [4]   12/24 15/4
 17/14 17/15
certify [1]   34/3
cetera [2]   13/14 27/3
chance [4]   5/20 8/9 8/19
 16/14
change [1]   11/12
Charlottesville [1]   1/17
check [1]   33/9
chooses [1]   28/21
chosen [1]   7/20
circumstance [3]   24/5 26/3
 28/13
circumstances [2]   14/4
 22/15
Civil [2]   1/3 2/2
claim [7]   22/14 22/21
 22/24 24/15 26/1 30/23
 30/25
claims [3]   23/6 28/6 28/8
clarifies [1]   7/16
clarify [1]   2/23
clear [7]   13/1 15/9 18/1
 18/23 19/3 21/23 23/20
clearly [5]   12/17 25/24
 26/2 26/5 31/12
client [1]   26/25
client's [2]   10/18 10/22
clients [5]   25/18 25/19
 26/13 26/22 26/22
close [2]   18/14 26/13
COLUMBIA [1]   1/1
come [5]   8/14 15/2 15/5
 15/25 16/9
comes [1]   13/1
communicated [1]   29/14
communications [5]   3/15
 4/12 5/8 9/6 9/10
company [4]   9/18 11/24
 29/16 29/20
comparable [1]   14/4
compete [1]   9/24
complaint [9]   21/12 21/13

 22/9 22/12 22/13 23/8 26/7
 28/3 28/4
completed [1]   13/10
completely [1]   17/17
compliance [1]   15/24
complied [1]   15/20
comply [1]   31/23
component [1]   22/20
computer [13]   1/25 21/20
 21/20 21/20 22/5 23/21
 23/23 24/16 25/17 26/12
 26/19 26/21 30/18
computer-aided [1]   1/25
computers [1]   25/1
concern [1]   11/5
concerned [2]   14/1 22/18
concerning [1]   22/23
concerns [1]   31/1
conclude [2]   32/12 32/15
conditional [1]   19/2
confer [3]   19/17 20/17
 20/25
conference [5]   1/9 6/16
 16/9 21/6 33/9
confusion [1]   23/24
connection [1]   29/16
consent [1]   10/24
conservative [1]   23/13
consider [1]   31/12
Constitution [1]   1/22
context [3]   31/19 32/5
 32/14
continue [2]   19/23 23/5
contract [4]   24/4 26/1
 30/23 30/25
conversations [2]   7/15
 7/21
coordinate [1]   8/1
copy [2]   13/6 27/4
correct [5]   17/12 24/17
 24/18 25/10 34/4
correctly [1]   25/6
corrupted [1]   30/21
could [17]   5/8 8/13 14/8
 15/1 15/4 15/12 15/13
 15/24 16/17 17/21 18/10
 20/18 20/22 21/3 23/9 31/6
 31/11
couldn't [2]   18/7 20/13
counsel [2]   12/22 17/21
count [2]   26/6 26/6
couple [1]   20/18
coupled [1]   23/20
court [21]   1/1 1/20 1/21
 2/25 3/15 3/20 6/21 8/14
 12/13 14/20 15/13 15/25
 16/12 16/12 17/23 21/12
 22/19 23/2 30/2 31/11
 31/23
Court's [1]   3/4
courtroom [1]   4/3
Courts [1]   1/21
created [2]   27/1 27/2
creates [1]   24/10
credibility [1]   9/25
critical [1]   3/13
critically [2]   9/1 9/5
cross [1]   33/4
cross-motion [1]   33/4
CSR [3]   1/20 34/3 34/10
current [2]   12/6 12/9

**C**

cv [1]   1/4

**D**

D.C [1]   11/18
daily [1]   25/22
date [19]   4/16 5/10 7/21
7/23 7/25 8/10 12/6 12/9
14/17 14/17 15/2 15/2 15/6
15/16 22/4 32/23 32/24
33/13 34/10
dated [1]   7/11
dates [1]   10/18
daughter [5]   4/13 8/5 8/10
11/18 11/25
daughter's [1]   14/21
day [7]   5/25 10/15 10/16
24/18 24/20 25/17 29/9
days [2]   11/21 25/20
DC [2]   1/5 1/23
deadline [2]   4/11 8/13
deadlines [1]   14/20
deal [2]   8/6 9/6
dealing [1]   2/22
deceit [1]   14/5
decide [1]   21/6
decision [2]   17/1 23/25
declaration [1]   20/19
decouple [4]   17/4 17/13
18/2 19/14
defendant [10]   2/10 3/10
8/24 17/6 18/5 18/17 25/15
25/16 25/25 28/21
defendant's [1]   29/24
Defendants [2]   1/7 1/16
defendants' [1]   32/23
defense [1]   31/13
deleted [1]   29/14
departure [2]   23/15 26/14
depo [2]   10/13 10/18
deponent [1]   5/12
deposition [52]
depositions [8]   4/12 9/4
9/5 10/19 11/16 17/19 18/5
18/22
depth [1]   3/1
described [1]   27/13
destroyed [8]   21/19 23/21
24/17 24/19 24/21 27/15
29/7 29/9
detail [1]   20/8
determine [1]   27/2
determined [1]   30/16
devices [1]   30/17
did [12]   5/6 5/10 7/8 7/17
7/23 8/18 10/9 12/13 17/14
29/18 30/5 30/15
didn't [9]   5/21 6/17 6/18
6/19 7/7 7/18 9/3 14/11
15/5
different [3]   25/23 30/12
30/17
direct [3]   19/17 20/16
20/24
directed [1]   13/18
discovery [10]   8/13 19/23
21/16 22/22 23/25 26/4
28/10 28/14 29/4 33/11
discrete [1]   16/24
discussed [5]   7/21 9/19

11/2 12/22 23/15
discusses [1]   25/15
discussions [1]   25/16
disingenuous [1]   7/25
disposed [1]   30/21
dispute [2]   23/18 23/21
DISTRICT [4]   1/1 1/1 1/10
1/21
do [37]
docket [3]   6/5 6/13 7/6
document [1]   4/20 6/2
6/14 8/22 12/2 12/18 12/25
13/4 13/18 14/11 16/18
documents [42]
does [2]   3/23 17/3
doesn't [5]   12/6 19/11
25/6 29/11 29/12
doing [8]   9/19 19/10 19/25
20/25 27/10 28/2 28/18
31/24
don't [25]   2/12 4/6 7/4
7/9 8/20 9/16 11/10 15/6
15/12 15/23 16/15 16/20
16/22 19/5 22/15 22/22
23/5 25/11 27/5 29/1 29/1
29/2 29/22 32/10 32/11
done [1]   15/12
down [3]   16/13 17/23 30/11
drawing [1]   27/23
drives [2]   29/8 30/17
drop [1]   22/20
duces [2]   11/24 13/11
during [4]   9/4 9/4 9/5
26/4
duty [13]   14/1 21/16 22/14
22/21 23/3 24/3 24/6 24/10
24/13 24/13 25/9 27/18
28/6

**E**

e-mail [10]   6/8 6/22 7/10
7/12 10/11 10/14 10/25
11/23 12/4 12/8
e-mails [18]   3/11 3/11
3/12 3/21 4/8 4/10 4/23
6/20 8/17 9/2 9/8 9/11
9/12 9/14 9/21 15/10 29/17
29/20
earlier [8]   5/24 9/23 9/24
15/2 15/5 18/18 20/12 21/4
easier [1]   2/13
ECF [1]   7/5
edgewise [1]   16/13
effort [1]   8/15
efforts [2]   11/6 29/16
eight [2]   4/4 4/7
either [5]   17/21 19/6 26/4
29/19 31/25
electronically [2]   26/16
29/6
eliminate [2]   17/17 17/23
else [1]   15/12
employ [1]   21/22
employed [2]   27/16 29/10
enable [1]   23/5
end [1]   15/3
engaged [1]   14/5
enough [1]   8/10
entitled [1]   34/5
ESI [3]   26/12 26/15 29/5
essentially [1]   4/21

establish [2]   24/9 25/18
establishing [1]   26/13
et [3]   1/6 13/13 27/3
even [7]   14/18 15/21 16/15
16/17 17/17 23/13 27/14
event [3]   5/12 24/23 29/10
eventually [1]   11/17
ever [1]   18/13
every [2]   5/25 13/13
evidence [18]   6/6 21/18
21/19 22/22 23/3 23/14
23/22 24/7 24/11 24/14
25/22 26/6 27/16 27/19
27/22 27/23 29/17 30/13
evident [1]   8/17
exactly [2]   25/2 30/8
examination [2]   20/14
30/15
examined [1]   30/15
example [1]   20/12
except [1]   5/25
excerpts [1]   12/14
excessive [1]   16/11
exercise [1]   19/25
Exhibit [3]   12/16 13/9
13/11
Exhibit 106 [3]   12/16 13/9
13/11
exist [1]   21/2
existence [1]   24/9
exists [3]   27/1 27/3 27/18
expeditious [1]   20/22
explain [2]   5/7 21/3
explaining [1]   5/1
explanation [1]   18/6
extensive [3]   3/11 14/15
16/5
extent [1]   31/2

**F**

factual [3]   5/17 26/3
29/23
failure [1]   10/22
fair [1]   8/10
faith [6]   8/6 8/16 27/11
28/2 28/11 28/18
fallen [1]   20/14
far [2]   14/1 23/14
fashion [1]   15/15
father [2]   5/5 5/14
February [1]   10/11
February 2nd [1]   10/11
fiduciary [4]   21/16 22/14
22/21 28/6
figure [1]   24/1
file [10]   2/25 6/16 6/19
21/14 23/5 27/8 28/20
28/22 32/25 33/3
filed [5]   3/25 4/3 7/5
15/24 31/14
find [2]   22/22 33/13
fine [2]   8/9 29/25
first [10]   3/1 5/13 8/22
10/20 13/17 15/25 16/3
17/14 18/1 21/14
foregoing [1]   34/4
forensically [1]   30/14
forget [1]   15/13
forward [4]   8/7 15/7 17/1
28/12
Friday [2]   6/1 22/18

**F**

front [6]   4/6 6/5 6/22
 7/10 28/7 28/17
further [7]   3/14 7/16 18/3
 22/12 32/16 33/8 33/21
future [3]   24/8 24/11
 24/15

**G**

gathering [1]   26/21
gave [4]   3/5 15/9 18/11
 23/16
general [1]   24/5
generally [2]   25/21 31/25
Gents [2]   7/1 7/2
get [14]   2/14 6/1 7/5 7/8
 7/8 14/9 15/21 16/1 16/9
 16/13 19/9 20/5 30/11 31/3
get a [1]   7/8
getting [2]   20/1 30/20
give [6]   6/1 6/9 6/11 6/13
 16/13 29/18
given [3]   22/12 22/16
 22/16
Gmail [1]   12/4
go [12]   3/17 9/25 11/12
 12/21 14/6 15/13 16/10
 17/1 17/10 19/22 19/25
 27/8
goes [2]   7/16 29/5
going [23]   2/17 3/21 5/6
 7/23 7/24 8/2 12/8 13/21
 14/9 14/19 15/6 16/8 19/8
 19/8 19/13 20/24 21/1
 22/11 27/25 28/10 28/11
 28/16 31/18
gone [4]   8/3 22/5 26/8
 27/4
good [8]   2/8 2/9 8/6 8/16
 27/11 28/1 28/11 28/18
got [1]   16/13
granted [1]   23/7
great [1]   9/5
guess [4]   17/3 20/8 25/13
 32/21

**H**

had [23]   3/20 4/11 4/12
 4/22 5/9 5/20 5/20 5/22
 5/24 5/24 7/20 8/3 8/9
 9/22 13/23 15/18 18/17
 18/18 21/22 23/14 30/14
 30/24 33/2
half [1]   5/15
handful [1]   33/9
handling [1]   21/5
happen [2]   30/3 31/23
happened [5]   23/23 24/24
 24/25 25/7 29/12
happy [2]   12/11 17/24
hard [1]   2/11
has [12]   3/20 7/5 12/19
 12/19 13/4 23/2 25/9 25/14
 25/16 27/15 28/14 31/14
hasn't [1]   13/15
hate [1]   33/6
have [56]
haven't [5]   8/9 11/2 12/11
 16/5 16/5
Hawaii [1]   5/4

he [30]   4/13 4/13 4/14
 4/20 4/21 7/16 7/23 11/13
 13/9 13/13 13/14 13/14
 19/4 19/6 22/3 23/18 23/19
 29/8 29/9 29/9 29/10 29/10
 29/10 29/11 29/13 29/14
 29/18 30/20 30/20 30/21
he's [1]   16/3
Healthsperien [1]   9/18
hear [2]   2/12 13/5
heard [3]   16/4 16/5 19/2
hearing [4]   3/4 4/4 32/13
 32/16
HEDGEYE [13]   1/3 2/2 10/2
 21/22 23/4 23/5 23/15
 24/14 24/15 24/17 25/10
 25/17 25/19
heightened [1]   28/9
HELDMAN [19]   1/6 2/3 2/10
 3/12 5/14 8/25 9/2 9/4
 9/22 12/5 17/19 22/3 23/18
 25/19 29/7 29/13 29/14
 29/20 30/18
Heldman's [1]   30/14
hello [3]   16/7 16/7 16/7
her [32]   3/3 3/6 3/9 3/16
 3/17 4/15 4/18 5/5 5/6
 5/14 5/23 7/22 7/24 8/2
 8/4 12/12 12/25 13/5 13/9
 13/13 13/15 13/19 13/21
 15/1 15/18 17/24 18/3 19/8
 21/20 21/20 23/17 25/6
here [10]   6/4 10/11 23/24
 26/3 27/7 27/13 30/9 31/2
 33/8 33/13
Hi [1]   10/12
him [4]   4/19 19/5 21/3
 25/23
his [4]   4/13 6/8 14/21
 30/19
hold [4]   7/3 22/1 25/20
 33/13
Holmes [6]   22/25 23/20
 23/25 25/9 26/5 27/12
Honor [44]
HONORABLE [1]   1/9
Hook [3]   1/20 34/3 34/10
hope [1]   33/10
hour [3]   5/15 5/17 5/19
hours [8]   11/21 13/19
 14/12 16/19 16/22 18/12
 18/14 23/16
how [7]   10/8 11/2 14/8
 16/22 26/18 31/23 32/21
However [1]   17/20
HSP [1]   9/18
huh [1]   12/20
hundreds [1]   9/1
hybrid [1]   25/3

**I**

I'd [3]   13/5 13/15 15/24
I'll [7]   2/14 10/10 19/17
 20/16 21/6 23/25 32/15
I'm [40]
I've [3]   15/20 16/4 19/1
identify [2]   2/4 21/1
if [50]
imposed [1]   14/20
in [82]
in-depth [1]   3/1

included [2]   3/12 9/2
including [1]   29/4
independent [1]   27/25
indicate [1]   7/23
indicated [1]   5/25
individual [1]   27/15
inference [3]   27/23 29/5
 32/9
informally [1]   11/15
information [9]   21/15 22/6
 26/8 26/8 26/10 26/17 28/7
 28/16 29/7
inquire [1]   3/14
inserted [1]   30/17
inspected [1]   30/15
instead [1]   20/19
instruction [2]   30/10 31/3
instructions [1]   29/19
interest [1]   9/12
interested [1]   9/15
interrogatories [1]   10/24
interrupt [2]   6/3 13/16
into [5]   3/14 3/14 13/21
 15/13 30/17
investment [1]   9/19
involving [1]   28/13
is [80]
issue [13]   5/7 11/6 12/1
 12/15 12/24 19/1 21/10
 21/11 29/24 32/13 32/18
 32/20 32/20
issues [5]   10/21 19/9 26/3
 32/9 33/9
it [94]
it's [14]   6/8 7/1 7/19
 7/25 8/16 18/25 20/1 24/1
 24/23 25/3 27/13 29/25
 30/21 31/23

**J**

January [5]   3/13 21/21
 22/2 22/4 30/22
January 21st [2]   3/13
 21/21
January 28th [3]   22/2 22/4
 30/22
Jeff [3]   1/20 34/3 34/10
JOHN [3]   1/16 2/9 10/12
joint [1]   2/17
JUDGE [5]   1/10 3/18 8/16
 15/4 32/21
judgment [11]   31/10 31/14
 31/20 32/1 32/9 32/18
 32/24 32/25 33/1 33/4
 33/18
June [3]   1/5 33/14 33/19
June 27th [2]   33/14 33/19
jurisdiction [1]   19/9
jury [1]   31/3
just [44]

**K**

keep [3]   20/3 33/7 33/12
kind [2]   5/1 7/25
know [23]   2/12 7/4 7/4
 7/19 8/3 8/5 8/6 8/21 9/16
 13/10 14/1 15/12 16/15
 17/23 25/11 25/21 26/11
 26/18 28/12 29/11 29/12
 29/22 32/4
known [1]   13/23

## L

lack [1]  9/6
laptop [2]  25/4 30/14
large [1]  28/17
last [3]  3/4 22/18 32/19
later [7]  5/24 10/16 13/1 14/17 21/23 25/20 32/24
lawyer [1]  25/14
leading [1]  7/21
learned [1]  21/15
least [6]  12/5 15/19 17/3 22/13 23/17 25/16
leave [11]  9/23 21/12 22/12 22/16 22/16 23/7 27/9 28/4 28/20 30/20 32/11
leaving [1]  25/16
left [7]  2/24 3/18 3/21 21/22 24/17 24/19 29/9
legal [1]  24/8
lengths [1]  16/11
less [7]  11/21 11/21 13/18 14/12 16/18 16/22 18/11
let [9]  6/3 13/10 13/12 13/17 14/6 16/16 18/24 25/13 33/13
let's [6]  8/10 8/11 8/12 14/17 15/13 15/21
letter [2]  25/20 30/22
light [3]  11/5 21/8 32/21
like [9]  3/14 4/9 8/4 13/5 13/15 14/19 16/18 21/13 29/23
limit [1]  12/6
limited [1]  17/20
literally [1]  23/16
litigation [3]  22/1 24/12 25/20
little [1]  2/11
lives [1]  5/3
LLC [4]  1/3 2/3 23/12 25/25
located [1]  19/10
location [2]  4/17 5/11
Locust [1]  1/17
logistics [7]  4/14 4/16 4/22 5/8 7/17 11/1 11/8
longer [4]  24/23 27/1 27/16 28/13
look [6]  6/14 15/6 15/21 27/11 32/12 32/14
looked [2]  5/16 27/13
looking [4]  20/19 30/8 30/8 30/9
lot [1]  31/1

## M

MA [1]  1/14
MacBook [1]  25/5
made [3]  8/16 17/1 30/11
mail [10]  6/8 6/22 7/10 7/12 10/11 10/14 10/25 11/23 12/4 12/8
mails [18]  3/11 3/11 3/12 3/21 4/8 4/10 4/23 6/20 8/17 9/2 9/8 9/11 9/12 9/14 9/21 15/10 29/17 29/20
make [8]  8/15 11/18 12/11 16/8 27/14 28/1 28/17

31/22
making [3]  9/24 28/14 28/15
MANAGEMENT [2]  1/3 2/3
manner [2]  8/7 20/22
March [11]  3/10 4/19 4/20 4/25 5/1 6/10 6/25 7/4 7/11 11/19 11/24
March 5 [1]  7/11
March 5th [6]  4/20 4/25 6/10 6/25 7/4 11/24
March 7th [4]  3/10 4/19 5/1 11/19
Martin [1]  1/16
matter [2]  12/7 34/5
may [5]  8/23 13/16 23/11 29/8 32/14
maybe [1]  7/19
me [30]  4/6 4/9 6/3 6/5 6/7 6/9 6/13 6/23 6/25 7/10 11/4 12/20 13/10 13/12 13/15 13/17 14/4 14/6 15/22 16/14 16/16 16/25 17/10 18/6 18/24 25/13 27/13 30/5 33/11 33/13
mean [4]  4/16 7/25 26/7 32/4
meant [1]  5/8
meet [4]  6/1 19/17 20/17 20/25
memory [2]  3/4 9/6
mentioned [1]  22/18
merits [1]  19/16
met [2]  5/14 5/17
metadata [1]  27/3
might [3]  2/13 24/15 28/7
Mind [1]  5/3
minute [1]  14/7
minutes [2]  5/17 5/19
model [1]  25/3
moment [3]  13/17 16/16 33/14
Monday [3]  4/24 11/24 15/4
month [1]  15/22
months [1]  15/23
more [9]  3/1 6/18 6/19 20/8 20/22 21/14 26/5 28/7 32/20
morning [2]  2/8 2/9
MOSS [1]  1/9
most [5]  9/1 9/14 17/25 23/13 26/13
motion [16]  3/1 6/17 15/24 21/14 27/8 28/20 28/22 29/4 31/14 31/19 31/25 32/6 32/23 33/1 33/4 33/18
move [5]  8/7 8/10 15/7 21/13 32/22
moved [1]  13/25
moving [2]  11/11 33/12
Mr. [49]
Mr. Bongiorni [4]  5/9 5/9 10/12 10/15
Mr. Heldman [13]  3/12 5/14 8/25 9/2 9/4 9/22 17/19 22/3 23/18 25/19 29/7 29/13 30/18
Mr. Heldman's [1]  30/14
Mr. Pellegrino [9]  2/21 12/15 12/20 12/23 13/2

14/6 14/8 25/8 30/22
Mr. Pellegrino's [2]  12/1 13/7
Mr. Simpson [20]  2/11 3/20 3/25 4/3 5/5 5/9 6/6 7/5 7/10 10/3 14/21 19/3 19/11 20/4 20/19 21/1 22/10 30/4 32/3 33/21
Ms [1]  3/5
Ms. [27]  2/23 3/2 3/10 3/12 5/3 9/2 9/4 11/18 11/22 12/6 12/15 17/18 19/18 21/17 22/2 23/3 23/17 24/14 24/17 25/9 25/14 26/7 28/21 29/14 29/15 29/19 29/19
Ms. Banerjee [3]  12/6 29/15 29/19
Ms. Heldman [1]  29/14
Ms. Simpson [21]  2/23 3/2 3/12 5/3 9/2 9/4 11/18 11/22 12/15 19/18 21/17 22/2 23/3 23/17 24/14 24/17 25/9 25/14 26/7 28/21 29/19
Ms. Simpson's [2]  3/10 17/18
much [1]  18/18
multitude [2]  5/22 8/12
must [1]  24/9
my [13]  6/18 8/5 10/8 11/18 11/25 12/10 12/17 13/20 14/19 17/3 17/14 18/12 30/13
myself [3]  3/21 7/1 15/11

## N

narrow [2]  9/10 17/22
nature [2]  14/24 15/17
necessarily [1]  17/16
necessary [1]  16/2
necessity [1]  17/24
need [13]  10/25 17/17 20/2 20/5 20/8 20/9 21/1 28/5 28/17 32/6 32/13 32/15 33/7
needs [2]  17/6 17/7
never [6]  7/15 7/23 15/16 15/23 16/3 24/13
new [9]  8/23 21/22 21/24 25/1 25/18 26/23 29/15 29/18 29/20
next [6]  15/22 16/9 21/10 21/11 28/24 28/25
night [1]  5/13
no [29]  1/4 4/6 6/9 6/9 6/9 11/9 12/17 12/18 12/24 13/6 13/8 13/14 18/6 22/5 22/6 22/23 23/4 23/21 24/6 24/13 24/23 26/9 27/1 27/16 28/13 31/16 31/24 32/7 33/23
not [47]
notice [8]  4/19 7/24 11/8 15/1 18/12 22/1 22/1 22/3
notices [1]  7/5
notion [1]  27/14
now [12]  15/1 15/23 16/3 16/25 19/7 22/13 22/13 28/6 28/9 28/17 30/1 32/12
number [1]  12/3

**N**

NW [1]   1/22

**O**

object [3]   22/11 23/7 32/4
objection [6]   12/17 15/16
  16/5 29/2 32/3 32/5
obligations [2]   28/5 28/9
obtain [1]   28/10
obtaining [1]   22/7
obviously [8]   3/13 3/15
  10/24 17/14 22/11 27/12
  28/21 30/11
occur [3]   10/19 11/3 14/13
of the [1]   22/21
off [6]   2/14 2/24 3/18
  3/21 14/17 14/23
off the [1]   14/23
offer [2]   17/15 19/2
offered [2]   5/22 14/16
official [1]   1/21
Oh [1]   30/7
okay [11]   4/7 8/8 10/3
  10/7 15/13 18/20 21/10
  28/22 32/11 33/5 33/24
on [58]
once [3]   7/23 28/6 32/14
one [9]   5/23 7/8 18/1 18/4
  21/16 23/10 25/9 25/22
  28/25
onerous [1]   6/2
only [5]   8/23 15/2 29/16
  29/18 30/18
open [1]   6/5
opinion [1]   27/12
opposition [7]   28/22 29/25
  31/10 31/13 31/19 32/2
  32/18
options [1]   5/23
or [35]
oral [1]   27/7
order [3]   3/1 3/16 13/25
orders [1]   32/22
original [2]   27/1 27/3
other [4]   16/24 24/5 24/7
  29/10
otherwise [2]   11/14 17/16
our [3]   3/4 4/4 31/10
out [14]   4/14 4/22 7/18
  8/3 11/1 11/8 11/15 14/19
  15/4 15/5 18/22 19/1 24/1
  26/4
outset [1]   25/24
outside [1]   15/9
over [6]   3/17 3/21 4/8
  7/22 15/1 15/22
overbroad [2]   19/12 20/1

**P**

p.m [4]   6/25 7/4 11/23
  33/14
page [6]   10/10 12/16 13/3
  13/13 24/1 24/2
pages [2]   4/4 4/7
part [2]   3/19 10/8
participates [1]   25/23
particular [4]   10/9 11/5
  12/7 26/25
particularly [1]   22/23
parties [7]   2/3 9/7 18/25

parties' [1]   27/7
partners [2]   23/12 29/21
party [9]   21/17 22/24 24/7
  24/7 24/9 25/13 25/14
  27/16 28/13
past [1]   11/5
PAUL [4]   1/6 2/3 2/10 12/4
Paul's [1]   11/13
PC [1]   1/16
PELLEGRINO [13]   1/12 1/13
  2/6 2/20 2/21 12/15 12/20
  12/23 13/2 14/6 14/8 25/8
  30/22
Pellegrino's [2]   12/1 13/7
pending [1]   33/18
perhaps [3]   20/4 20/19
  20/21
period [7]   3/14 12/8 17/17
  19/23 21/7 21/24 26/13
permission [5]   2/25 6/16
  22/8 30/3 32/25
person [1]   6/1
persons [2]   9/15 9/17
pertaining [1]   2/23
phone [1]   16/14
pick [1]   2/13
plaintiff [4]   1/4 1/12 2/5
  24/9
plaintiff's [1]   33/1
plaintiffs [6]   2/18 27/6
  27/8 27/21 32/17 32/23
plans [3]   9/23 9/24 10/1
pleadings [1]   6/18
please [3]   2/4 6/23 13/10
plugged [1]   30/20
point [6]   5/2 6/7 23/8
  23/10 24/19 28/19
points [1]   25/24
position [6]   13/8 13/23
  14/2 14/3 15/5 27/5
possible [2]   10/18 24/6
possibly [3]   14/8 16/23
  20/3
practical [1]   17/25
practice [1]   18/12
pre [1]   9/12
pre-separation [1]   9/12
precisely [1]   21/2
predicament [1]   5/2
preference [1]   17/14
prepare [1]   5/14
present [2]   20/24 32/16
presented [1]   12/15
preservation [2]   27/18
  27/22
preserve [6]   23/3 24/6
  24/11 24/14 29/17 29/20
preserved [3]   22/6 23/22
  27/24
previously [1]   20/15
prior [11]   5/22 8/3 9/2
  9/7 14/24 18/7 18/19 23/15
  25/16 26/14 30/21
probably [3]   11/14 17/21
  24/22
problem [2]   7/18 31/24
procedurally [1]   32/4
procedures [1]   31/22
proceed [2]   12/12 20/22
proceedings [3]   1/24 33/25

34/5
process [1]   2/17
produce [15]   3/2 3/16 8/11
  8/21 10/22 14/18 15/6
  16/17 16/21 16/23 17/2
  17/6 17/8 17/10 19/19
produced [13]   1/25 3/7
  3/11 4/4 8/24 8/25 17/19
  18/5 18/7 18/11 18/13
  18/18 23/14
production [5]   14/11 17/4
  18/2 18/18 19/15
professionally [1]   8/6
prompt [1]   7/8
proper [2]   11/7 11/7
properly [1]   31/5
protective [1]   13/25
provide [2]   16/21 28/7
provided [3]   4/14 7/17
  12/13
prudent [1]   11/3
purpose [1]   6/15
purposes [4]   19/10 19/13
  20/24 32/17
pursuant [1]   13/22
put [5]   4/10 14/16 14/23
  26/22 32/1
puts [1]   28/9
putting [1]   15/21

**Q**

quash [1]   13/25
question [10]   13/6 16/15
  17/3 17/4 17/6 19/12 19/14
  19/16 27/24 29/3
questioning [1]   9/3
questions [9]   8/23 16/14
  18/4 20/11 20/18 20/20
  21/4 27/21 33/2
quite [1]   27/10
quoting [1]   25/21

**R**

RAIPHER [4]   1/12 1/13 2/6
  2/19
raise [7]   29/24 31/19
  31/25 32/6 32/8 32/18
  33/22
raised [2]   10/21 27/21
raising [1]   32/5
Raka [2]   3/5 12/5
RANDOLPH [1]   1/9
rapidly [2]   16/11 16/11
rather [2]   17/7 20/22
re [2]   22/14 28/6
re-allege [1]   22/14
re-alleging [1]   28/6
reach [2]   19/21 21/4
read [10]   6/23 10/10 13/9
  13/13 13/15 13/15 15/10
  15/19 23/25 25/11
reading [2]   6/20 13/10
ready [1]   30/20
really [3]   14/4 20/2 27/10
realtime [1]   1/24
reason [5]   11/9 18/7 24/4
  31/16 32/10
reasonable [5]   11/11 12/3
  16/21 16/23 20/20
reasonably [2]   16/2 19/19
reasons [2]   21/13 22/9

**R**

recall [4]   25/3 25/6 29/8 30/24
receive [3]   7/7 7/8 10/17
received [4]   10/11 11/23 12/10 22/4
receiving [1]   25/20
reciprocity [1]   11/11
recognized [2]   23/1 30/19
recollection [1]   30/13
record [3]   2/4 19/6 34/4
recorded [1]   1/24
recover [1]   26/8
reference [2]   4/11 6/13
referring [4]   4/5 18/16 18/16 18/23
refine [1]   28/8
refresh [3]   3/3 4/9 9/9
regarding [2]   10/21 29/15
regularly [1]   29/13
relate [2]   9/15 31/10
related [7]   8/23 9/17 18/4 25/25 26/12 29/17 30/24
relates [1]   17/18
relating [1]   27/23
relationship [4]   23/2 24/3 24/10 27/18
relying [1]   7/13
remember [2]   25/2 25/7
reopen [2]   3/9 17/18
reopened [1]   21/7
reopening [5]   17/5 17/9 19/16 20/7 20/23
replied [1]   10/15
report [1]   2/17
reporter [3]   1/20 1/21 16/12
represent [2]   5/6 17/15
representation [2]   12/2 22/19
representations [1]   27/7
representing [2]   4/13 8/2
request [2]   2/23 3/7 3/19 4/20 5/21 6/2 13/18 14/11 16/18 18/14 32/22 32/25
requested [7]   3/2 7/14 10/20 10/22 12/3 18/10 18/17
requesting [2]   2/25 3/17
requests [7]   3/3 3/5 5/13 8/22 12/2 17/22 18/17
require [1]   23/3
requirement [1]   26/9
requirements [1]   15/20
requires [1]   17/9
reschedule [1]   5/23
resigned [1]   23/19
resolve [4]   15/14 17/21 33/10 33/12
respect [14]   18/24 20/7 20/21 22/24 23/17 23/18 26/7 27/18 27/21 31/7 32/9 32/25 33/6 33/11
respond [5]   10/4 23/10 30/6 32/23 33/18
responded [2]   3/6 4/20
response [8]   8/21 10/21 12/10 13/7 19/15 19/19 20/1 32/22
restate [2]   21/14 25/13

retaking [1]   17/24
review [4]   5/21 5/21 8/9 23/13
reviewed [2]   3/25 10/6
revisit [1]   28/5
right [3]   13/20 16/3 24/21
rightfully [1]   5/5
rising [1]   24/4
RISK [2]   1/3 2/2
road [1]   30/11
Room [1]   1/22
RPR [3]   1/20 34/3 34/10
rude [1]   8/5
rule [6]   14/16 15/19 16/20 24/6 27/6 28/5
run [1]   25/9

**S**

said [12]   4/13 5/15 5/17 8/8 11/10 15/13 15/21 16/16 17/2 19/14 28/19 29/8
same [7]   3/4 5/10 8/1 10/10 10/15 25/14 25/17
sanctions [1]   29/4
Sasha [3]   9/22 13/18 17/7
Sasha's [1]   10/13
save [1]   29/17
saw [3]   5/12 13/17 22/3
say [12]   7/16 9/8 9/11 9/16 11/12 12/21 13/5 18/24 28/4 28/9 31/18 31/20
say that [1]   9/8
saying [7]   4/20 8/1 10/12 10/16 12/17 12/21 13/4
says [4]   13/9 13/14 13/14 23/25
schedule [3]   7/25 11/13 33/8
scheduled [1]   14/13
schedules [1]   14/21
scheduling [5]   11/1 11/15 14/10 32/20 33/2
scope [5]   12/7 15/16 15/17 16/2 20/14
second [7]   3/7 6/4 6/4 7/3 18/4 18/21 21/16
secondly [1]   8/24
see [7]   7/18 11/8 16/22 18/20 20/9 32/10 33/13
seeking [2]   28/4 32/8
seem [1]   9/15
seen [1]   16/5
sent [6]   4/19 15/1 15/4 18/21 22/2 30/22
separate [4]   17/8 19/11 27/20 32/6
separation [1]   9/12
series [3]   3/21 4/23 8/17
serve [5]   8/4 14/11 19/7 19/8 19/24
served [8]   12/19 13/4 13/8 13/24 14/3 14/15 16/18 19/3
service [14]   4/15 4/21 5/7 6/7 7/14 10/13 10/25 11/4 11/7 11/10 19/2 19/4 19/6 19/11
serving [1]   19/25
set [4]   8/8 16/24 26/23

33/8
setting [2]   21/21 21/23
seven [1]   25/20
she [20]   3/6 5/12 5/13 5/17 5/20 5/21 5/24 5/25 13/4 13/15 13/23 19/10 21/19 21/20 22/3 25/6 25/22 26/20 26/20 28/21
she's [3]   13/8 13/14 14/3
short [2]   10/12 17/17
shorthand [1]   1/24
should [3]   21/7 22/16 31/4
show [3]   9/22 11/20 26/9
sic [1]   29/15
similar [1]   20/12
simple [1]   17/22
simply [1]   27/7
SIMPSON [51]
Simpson's [2]   3/10 17/18
since [2]   10/20 11/1
six [2]   29/8 30/16
slow [1]   16/13
slowly [2]   6/23 10/10
so [62]
So why [1]   31/15
solicitation [2]   22/20 22/21
solicited [1]   10/1
some [12]   6/6 14/5 19/18 21/5 23/24 24/3 24/8 24/14 24/19 28/8 31/2 32/8
somebody [1]   13/5
somehow [1]   22/14
something [7]   4/2 8/8 17/13 23/14 30/5 30/10 31/13
somewhat [1]   28/15
somewhere [1]   5/19
sorry [9]   3/11 6/3 6/12 7/3 11/7 13/16 16/7 30/5 30/7
sort [4]   14/5 25/3 31/2 32/8
space [1]   9/18
speak [2]   14/2 14/4
speakerphone [3]   2/12 2/14 2/15
speaking [2]   2/18 9/14
special [5]   23/2 24/3 24/5 24/10 26/2
specific [1]   20/9
specifically [3]   9/10 26/9 29/5
specificity [1]   21/15
speculate [1]   28/15
spoliation [4]   21/18 22/24 30/9 31/3
spreadsheet [1]   26/25
Springfield [1]   1/14
start [1]   16/10
started [3]   9/19 23/15 25/2
starting [5]   2/4 13/3 25/15 29/15 29/17
starts [1]   4/24
state [2]   1/14 7/17
stated [5]   7/15 9/23 9/24 12/17 13/3
statement [1]   6/6
STATES [2]   1/1 1/10
status [4]   2/17 16/9 21/6

**S**

status... [1]   33/8
statute [1]   24/5
stay [2]   8/13 33/17
staying [1]   10/2
stenographer [1]   4/3
stenographic [1]   1/24
still [3]   10/17 15/23 18/4
stopped [1]   24/22
stored [2]   26/16 29/6
Street [1]   1/14
stuff [1]   7/5
subject [1]   12/7
submission [2]   10/6 10/8
submit [3]   6/17 6/20 10/9
submit to [1]   6/20
submitted [1]   11/20
subpoena [24]   4/15 7/14
  10/13 11/19 11/24 12/11
  12/12 12/19 13/2 13/8
  13/11 13/22 13/24 14/3
  14/12 18/10 18/25 19/3
  19/7 19/9 19/12 19/15
  19/19 19/24
subpoenas [1]   11/6
subset [1]   19/18
substance [1]   32/4
such [2]   21/14 24/10
sufficient [1]   27/17
Suite [1]   1/17
summary [11]   31/10 31/14
  31/20 32/1 32/9 32/18
  32/24 32/25 33/1 33/4
  33/18
supplementation [1]   10/23
supports [1]   27/14
sure [8]   9/17 24/21 27/10
  27/14 28/1 28/18 30/8
  31/22
surprise [1]   31/24

**T**

tablet [1]   25/4
take [8]   4/11 12/1 15/5
  17/5 24/16 25/8 28/14
  33/19
taken [4]   4/25 13/22 17/19
  18/22
taking [5]   13/7 13/23 14/2
  18/3 26/12
talking [4]   3/24 13/14
  16/10 31/11
targeted [1]   20/3
tecum [2]   11/24 13/11
telephone [5]   1/9 1/12
  1/13 1/16 16/8
telephonically [1]   33/15
tell [1]   18/9
terminated [1]   23/19
termination [1]   23/17
terms [1]   12/22
testified [3]   5/12 26/20
  29/13
testimony [5]   9/25 23/13
  25/6 29/11 30/19
text [1]   29/15
texts [1]   29/14
than [12]   9/23 9/24 11/21
  11/21 13/19 14/12 16/19
  16/22 16/24 18/11 20/22

26/6
thank [7]   20/6 21/9 28/23
  32/19 33/16 33/20 33/24
Thanks [1]   10/14
that [237]
that we [1]   15/10
that's [17]   2/16 3/7 3/8
  4/4 11/19 12/13 12/25
  13/20 14/16 15/18 18/22
  20/8 22/15 22/22 32/1 32/7
  32/10
the documents [1]   16/2
their [16]   9/4 9/25 10/1
  14/2 21/21 21/24 23/8
  23/15 23/16 25/2 25/25
  26/14 26/22 26/22 26/23
  29/16
them [20]   6/1 10/1 12/3
  12/8 14/16 14/17 14/18
  14/23 15/6 15/22 17/2
  17/10 17/22 18/11 22/12
  23/7 29/12 30/19 30/21
  32/5
themselves [2]   2/4 33/11
then [18]   4/23 6/17 7/16
  8/1 8/4 8/23 10/15 11/12
  13/1 13/5 17/3 17/8 18/3
  19/22 20/4 21/5 31/4 33/19
there [19]   2/24 3/3 3/19
  4/23 7/15 7/20 8/23 9/5
  12/3 14/1 14/24 15/16 19/2
  19/18 20/12 20/17 21/12
  21/19 22/19 23/2 24/6
  24/13 26/2 27/24 28/11
  29/7 30/11 30/16 31/1
there's [22]   11/12 13/6
  13/14 15/23 18/6 19/11
  20/21 22/5 22/6 22/25 23/4
  23/18 23/21 23/24 24/13
  26/5 26/9 27/22 29/2 31/16
  32/13 32/15
thereafter [1]   21/25
these [6]   4/11 11/15 16/4
  16/25 26/12 33/9
they [50]
they'll [1]   8/21
they're [7]   9/21 14/15
  20/20 23/12 30/8 30/8 30/9
They've [1]   22/16
thing [1]   8/22
things [5]   2/24 8/12 14/24
  31/23 33/12
think [40]
third [6]   21/17 22/13
  22/24 24/8 25/12 25/14
this [55]
those [24]   3/14 3/15 3/17
  4/10 5/8 8/23 9/8 9/10
  9/11 9/17 14/4 15/10 18/16
  20/11 20/20 20/21 21/3
  22/9 26/3 28/8 28/15 30/20
  33/1 33/12
though [2]   20/16 27/10
thought [3]   6/15 14/9
  14/14
three [3]   29/8 29/10 30/19
through [6]   2/17 4/24
  17/22 19/25 21/15 25/24
thumb [2]   29/8 30/17
thus [1]   23/14
time [23]   5/13 6/1 7/25

8/1 12/8 13/17 15/11 16/4
  16/21 16/23 18/13 19/3
  19/4 19/23 21/7 21/24
  23/16 26/13 27/14 29/23
  31/5 31/7 33/17
time's [1]   30/1
timeframe [1]   5/20
timely [2]   14/16 16/20
timing [5]   7/22 14/23 29/3
  31/11 33/6
to allow [1]   3/8
today [6]   13/4 13/5 13/8
  19/14 32/22 33/22
together [1]   26/22
told [5]   13/15 14/17 16/25
  17/10 17/10
toll [1]   33/17
too [4]   16/3 16/4 16/4
  16/11
took [3]   3/9 4/18 9/18
tort [4]   21/17 23/1 27/17
  27/25
totally [1]   32/7
trains [1]   33/8
transcript [8]   1/9 1/25
  3/19 3/23 3/24 5/16 12/14
  34/4
transcription [1]   1/25
trial [2]   26/5 31/25
tried [2]   8/3 8/4
trouble [1]   8/14
try [1]   14/19
trying [12]   8/6 8/15 11/15
  14/20 14/25 14/25 15/14
  16/1 17/23 24/1 26/22
  31/22
two [7]   2/24 9/6 11/21
  15/22 21/12 22/9 30/19

**U**

U.S [1]   1/21
Uh [1]   12/20
Uh-huh [1]   12/20
ultimately [2]   4/17 5/6
unable [2]   19/21 21/4
unavailable [1]   11/13
unclear [1]   22/2
under [9]   5/4 14/4 14/16
  15/19 16/20 22/15 23/20
  25/8 26/5
understand [9]   7/9 8/25
  12/24 19/6 20/10 20/13
  29/11 30/2 32/21
understanding [5]   5/4 5/10
  6/19 13/21 30/13
understood [3]   4/16 25/12
  29/24
unfortunate [1]   18/25
UNITED [2]   1/1 1/10
unnamed [1]   9/15
until [5]   12/6 14/12 15/11
  16/3 33/18
up [14]   2/13 6/4 7/21 12/6
  12/15 13/1 15/2 15/11 17/5
  21/21 21/24 26/23 31/4
  33/19
upon [2]   4/18 7/13
urge [1]   19/24
us [6]   3/8 3/9 6/8 6/16
  6/19 9/9
use [2]   24/11 31/13

## U

**used [4]**   21/21 24/18 26/20 26/23
**usually [1]**   7/8
**utilizes [1]**   25/17

## V

**VA [1]**   1/17
**vacations [1]**   14/24
**versus [1]**   2/3
**very [10]**   8/5 10/12 15/8 15/14 16/11 16/24 16/24 17/20 28/1 30/12
**vetted [1]**   26/4
**via [4]**   1/12 1/13 1/16 29/15
**view [1]**   30/12
**vis [2]**   10/2 10/2
**vis-a-vis [1]**   10/2
**voluntarily [1]**   19/20

## W

**waiting [1]**   10/17
**want [18]**   6/14 6/19 10/3 10/7 19/7 20/10 21/2 22/13 23/5 27/9 29/1 29/3 30/2 31/3 31/9 32/8 32/17 33/3
**want to [1]**   10/7
**wanted [1]**   33/22
**wants [1]**   31/23
**was [73]**
**Washington [3]**   1/5 1/23 11/18
**wasn't [6]**   13/1 17/14 18/15 18/23 23/22 25/1
**way [14]**   12/13 14/19 16/11 16/12 17/25 20/4 20/21 21/5 22/5 22/6 25/12 25/12 31/22 32/12
**we [81]**
**we'd [4]**   3/14 6/17 11/22 15/2
**we'll [2]**   21/5 33/19
**we're [9]**   2/25 3/16 8/6 9/14 15/22 16/8 16/14 22/13 31/11
**Wednesday [1]**   4/25
**week [5]**   4/18 5/24 5/25 15/3 15/22
**welcome [1]**   33/4
**well [16]**   6/15 7/9 7/13 8/20 10/23 14/6 14/22 18/9 20/17 23/16 25/1 25/13 27/5 31/18 33/3 33/24
**went [4]**   4/8 4/23 7/22 26/4
**were [45]**
**what [38]**
**what's [3]**   10/8 21/10 28/24
**whatever [2]**   21/24 27/11
**whatever's [1]**   32/15
**when [19]**   5/15 8/8 9/19 9/25 11/2 12/10 13/10 15/8 16/15 22/3 22/19 26/21 27/2 27/2 29/25 30/3 30/20 31/11 32/12
**where [14]**   2/21 2/24 3/18 4/13 6/4 6/5 7/16 7/21 11/2 12/14 14/10 19/10

**whether [13]**   3/8 17/6 17/7 17/8 19/12 19/16 19/18 20/8 21/6 23/18 27/6 27/22 27/24
**which [21]**   3/12 3/13 5/23 9/18 9/24 10/19 12/20 13/11 16/2 16/12 16/19 16/24 17/21 21/2 27/6 27/12 27/15 29/6 29/8 31/14 32/20
**while [3]**   21/21 21/23 29/10
**who [10]**   5/5 9/16 9/21 25/14 25/15 25/15 27/2 27/15 28/14 28/14
**who's [1]**   2/17
**whoever [1]**   30/15
**why [13]**   11/9 14/16 15/18 18/7 18/9 20/10 20/13 21/3 21/13 31/15 31/18 32/10 32/11
**will [14]**   2/3 10/19 10/24 11/3 11/13 11/14 19/22 19/22 20/5 27/8 28/19 32/13 33/10 33/17
**willing [3]**   10/12 11/9 22/20
**wish [1]**   12/12
**within [5]**   8/13 14/19 20/14 23/16 32/1
**without [5]**   11/6 11/7 11/11 11/19 12/12
**won't [1]**   11/9
**word [3]**   16/10 16/13 24/22
**words [1]**   7/20
**work [7]**   8/13 10/25 11/8 11/15 14/19 19/1 20/4
**worked [3]**   4/14 4/22 7/17
**working [4]**   7/22 24/22 25/1 25/21
**works [1]**   7/23
**would [48]**
**Wren [1]**   1/16
**written [1]**   17/22

## Y

**Yeah [1]**   30/7
**years [1]**   18/12
**yes [7]**   6/24 10/5 13/7 14/2 25/13 30/6 31/8
**yet [1]**   28/14
**you [108]**
**you'd [2]**   4/9 14/18